[No. A120293. First Dist., Div. Four. July 31, 2009.]

THE PEOPLE, Plaintiff and Appellant, v.
GREGORY ALLEN CANNEDY, Defendant and Respondent.

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Gerald A. Engler, Assistant Attorney General, and Sharon Loughner, Deputy Attorney General, for Plaintiff and Appellant.

Michael L. Rains for Defendant and Respondent.

## OPINION

**SEPULVEDA, J.**—The People appeal from the trial court's order granting defendant Gregory Allen Cannedy's motion to recuse the Alameda County District Attorney's Office (district attorney's office) pursuant to Penal Code section 1424. They contend that the trial court abused its discretion in granting the order because there was insufficient evidence to support it, the court applied the incorrect legal standard, the order conflicts with established case law, and the court failed to consider less restrictive alternatives. We agree that the trial court erred in recusing the entire district attorney's office and reverse.

## FACTUAL BACKGROUND

In March 2007, the district attorney charged defendant, a former San Leandro police officer, with false imprisonment by violence and attempted sexual battery by restraint of Jane Doe Two (counts 1 and 2) and false imprisonment by violence, attempted sexual battery by restraint, and sexual battery of Jane Doe One (counts 3, 4, and 5).[1] The incidents underlying the charges involved defendant's allegedly making sexual advances and touching the victims inappropriately.

At some point, defendant learned that the district attorney intended to offer the testimony of Ms. A.,[2] one of its employees, who would testify about uncharged similar acts by defendant. In investigating the charges against defendant, Sergeant Rick DeCosta interviewed Ms. A.[3] Ms. A. related that she worked for the district attorney's Hayward office as a stenographer for seven years. She knew defendant because he went to the district attorney's office for subpoenas and also for a period of time was the police department's liaison to the district attorney's office. In 2002 or 2003, Ms. A. was having drinks with friends at the Englander Sports Pub. She saw defendant, and they chatted. Defendant asked her if she was all right to drive home. Defendant gave Ms. A. his business card and asked her to call him when she got home so that he would know she was okay. Ms. A. arrived home at approximately 11:00 or 11:30 p.m. She called defendant when she was on her way home, leaving him a message saying, "Everything's fine. I'm going home now." Ms. A. went home, put on her pajamas, and went to bed. She fell asleep and was awakened by her cell phone but ignored it. She answered the cell phone when it rang again shortly thereafter. It was defendant, and he wanted to know if she was okay. She told him that she was fine, but defendant kept talking, and she realized that he was at her front door. Ms. A. had not given defendant her address but had told him the general area in which she lived. Defendant asked her to "come to the door so I know you're okay." Ms. A. thought that was weird but opened the door. Defendant told her he just wanted a hug good night. Ms. A. just wanted to get back to sleep so she gave him a hug. But defendant pushed himself into the apartment. He would not let go of her. Ms. A. told him to leave and tried to push him off. But defendant started to kiss her neck and touch her groin area through her clothing. Ms. A. pushed him away again and told him to leave right away.

---

[1] The trial court subsequently reduced count 3 to a misdemeanor.

[2] We suppress the name of the victim in accordance with the California Supreme Court's policy statement concerning protective nondisclosure. (Cal. Style Manual (4th ed. 2000) § 5:9.)

[3] The Attorney General has moved in the trial court to settle the record on appeal to include two exhibits to defendant's recusal motion—the transcript of DeCosta's interview of Ms. A. and DeCosta's report of his investigation of the alleged incident involving Ms. A. As the parties do not dispute that the exhibits were part of defendant's recusal motion, we consider them here for purposes of understanding the factual scenario before the trial court.

Defendant stopped and apologized. He tried to give her another hug and proceeded to touch her again. Ms. A. pushed him away and again told him to go. Defendant eventually left.

The following day, Ms. A. told one of her coworkers about the incident. She also told her sister, who worked at the district attorney's office as the supervisor for welfare fraud. Her sister's husband is retired from the district attorney's office. Ms. A. did not report the incident because she thought it would create an awkward situation at work, and she thought she could handle it herself, so she just let it go. She also thought it was possible people would not believe her because defendant was a police officer.

On May 31, 2007, defendant moved to disqualify the district attorney's office. He contended that the office was required to recuse itself from the case because of Ms. A.'s anticipated testimony. In a declaration submitted in support of the motion, defendant stated that he worked in the district attorney's office as a court liaison for two or three months in 2005, spending approximately four hours daily in the office. There, he spoke with Ms. A. on a regular basis and Ms. A., on one occasion, invited him to her house to meet her sister. He also declared that he worked with the deputy district attorney who had charged him in the present case and talked with him on a number of occasions about factors he considered in filing cases.

The district attorney's office opposed the recusal motion, arguing that the victims were not connected to the district attorney's office, the conduct against Ms. A. was beyond the statute of limitations, and the less drastic remedy of having her "walled off from the case" had already been implemented. The trial court granted the motion.

## DISCUSSION

■ Penal Code section 1424 provides that a motion to disqualify the district attorney "may not be granted unless the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial." On appeal, our role is to determine whether substantial evidence supports the trial court's factual findings, and whether, based on those findings, the ruling was within the court's discretion. (*People v. Eubanks* (1996) 14 Cal.4th 580, 594 [59 Cal.Rptr.2d 200, 927 P.2d 310]; *People v. Merritt* (1993) 19 Cal.App.4th 1573, 1578 [24 Cal.Rptr.2d 177].)  (2)  A conflict under section 1424 "exists whenever the circumstances of a case evidence a reasonable possibility that the DA's office may not exercise its

discretionary function in an evenhanded manner. Thus, there is no need to determine whether a conflict is 'actual,' or only gives an 'appearance' of conflict." (*People v. Conner* (1983) 34 Cal.3d 141, 148 [193 Cal.Rptr. 148, 666 P.2d 5].) However, for recusal to be granted, defendant must demonstrate that fair treatment by the office is unlikely. As the court explained in *People v. Snow* (2003) 30 Cal.4th 43, 86 [132 Cal.Rptr.2d 271, 65 P.3d 749], "Defendant argues the trial court applied the wrong standard: according to him, the court was called upon only 'to determine whether there was a "reasonable possibility" that the D.A.'s office might not exercise its discretionary function in an evenhanded manner.' Defendant is clearly wrong: such a determination would satisfy only the first part of the two-part test outline in *Eubanks* and *Hambarian* [*v. Superior Court* (2002) 27 Cal.4th 826 [118 Cal.Rptr.2d 725, 44 P.3d 102]]. The trial court correctly refused to recuse the district attorney's office without a showing that prosecution by that office would render fair treatment unlikely. [Citation.]"

Defendant's recusal motion below was based upon the assumption that several employees of the district attorney's office would be called as witnesses and that the trial deputy would "be compelled, in clear violation of the authorities cited, to either argue for the credibility of her colleagues or, even more awkwardly, attack their credibility if their testimony tends to undermine Ms. A[.]'s testimony." Thus, argued defendant, it was "simply unrealistic to think any Alameda DA could impartially litigate a case—including charging and settlement decisions, conduct at trial, and sentencing positions—which involves allegations of sexual abuse against members of her own office, and at which other members of the office are likely to weigh in at trial." At the hearing on the recusal motion, defense counsel clarified the thrust of his motion: "It's whether or not the prosecutor, because of this situation with an employee being called as a material witness in their case, will exercise its discretion evenhandedly, and then my client can get a fair trial. Getting a fair trial has to do with pretrial motions. It has to do with offers of pretrial dispositions. It has to do with the way the prosecutor handles the investigatory aspect of the case. All of that has to do with whether or not my client can receive a fair trial." As far as a potential conflict that might arise out of the prosecutor's role in examining the employee witnesses, defense counsel argued that the deputy district attorney might "rather than perhaps saying, 'Wait a minute here. We may have a problem with this witness' credibility,' the People continue to vouch for her credibility by all accounts by adding additional charges against Mr. Cannedy based on that interview. [¶] That's what I talk about when I say can he get a fair trial. It has to do with the way the People are evaluating this case. . . ." Thus the thrust of defendant's

motion was that the district attorney's office would not fairly evaluate his case or exercise its discretion evenhandedly, based upon the involvement of its employees as witnesses.[4]

Relying on *People v. Superior Court (Greer)* (1977) 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164][5] and *People v. Conner, supra,* 34 Cal.3d 141, the People argue that there is insufficient evidence of a close connection and emotional involvement on the part of the entire district attorney's office to justify recusal, because the present case has none of the emotional factors present in those cases. In both *Greer* and *Conner,* applying the standards then in effect, the Supreme Court upheld the trial court's recusal of the district attorney's office on the ground that a conflict of interest existed because an employee of the office might be a victim or witness in the case. (*Greer, supra,* 19 Cal.3d at pp. 269–270 [victim of the homicide was the son of an employee of the same district attorney's office that was prosecuting defendants]; *Conner, supra,* 34 Cal.3d at p. 148 [deputy district attorney was a witness to and a potential victim of defendant's alleged criminal conduct and had discussed incident with approximately 10 deputy felony prosecutors in his office].) We concur with the People's position that recusal of the entire district attorney's office in this case was error.

Recusal of an entire district attorney's office is an extreme step. The threshold necessary for recusing an entire office is higher than that for an individual prosecutor. (*Millsap v. Superior Court* (1999) 70 Cal.App.4th 196, 200–201 [82 Cal.Rptr.2d 733].) As the Supreme Court explained in *People v. Eubanks, supra,* 14 Cal.4th 580: "The legislative mandate that recusal not be ordered on a mere 'possibility' of unfair treatment makes particularly compelling sense where, as here, what is at issue is the disqualification of the district attorney's entire office, rather than only one or a few deputies. '[W]hen the entire prosecutorial office of the district attorney is recused and the Attorney General is required to undertake the prosecution or employ a special prosecutor, the district attorney is prevented from carrying out the statutory duties of

---

[4] On appeal, the precise basis of defendant's argument is less clear. Much of his discussion of the law regarding recusal relates to recusal based upon the likelihood of unfair treatment by the district attorney. Ultimately, however, defendant relies upon the basis for the trial court's order recusing the district attorney's office, that the deputy district attorney trying the case would have to vouch for the credibility of other district attorney's office employees called as witnesses.

[5] We note that *People v. Superior Court (Greer), supra,* 19 Cal.3d 255 predates the enactment of Penal Code section 1424 which supersedes case law that previously allowed a defendant to recuse a district attorney by showing a conflict of interest *might* prejudice him or her against the defendant and thus *appear to affect* the district attorney's ability to impartially perform the discretionary functions of the office. (*People v. Jenan* (2006) 140 Cal.App.4th 782, 791 [44 Cal.Rptr.3d 771].) The enactment of section 1424 was intended to make the requirements for recusal of a district attorney stricter, in order to reduce the number of recusals. (See, e.g., *People v. Merritt, supra,* 19 Cal.App.4th at p. 1578.)

his elective office and, perhaps even more significantly, the residents of the county are deprived of the services of their [locally] elected representative in the prosecution of crime in the county.' [Citation.]" (*Id.* at p. 594, fn. 6; see also *People v. Snow, supra*, 30 Cal.4th at p. 86 [trial court properly refused to recuse district attorney's office without showing by defendant that prosecution by office would render fair treatment unlikely].)

■ Thus, "the entire prosecutorial office of the district attorney should not be recused in the absence of some substantial reason related to the proper administration of criminal justice." (*People ex rel. Younger v. Superior Court* (1978) 86 Cal.App.3d 180, 204 [150 Cal.Rptr. 156] (*Younger*); see also *People v. Merritt, supra*, 19 Cal.App.4th at pp. 1578–1579, quoting *People v. Hernandez* (1991) 235 Cal.App.3d 674, 679–680 [286 Cal.Rptr. 652].) As another court put it, "The recusal of an entire prosecutorial office is a serious step, imposing a substantial burden on the People, and the Legislature and courts may reasonably insist upon a showing that such a step is necessary to assure a fair trial." (*People v. Hamilton* (1989) 48 Cal.3d 1142, 1156 [259 Cal.Rptr. 701, 774 P.2d 730].) "It is a disfavored remedy that should not be applied unless justified by a substantial reason related to the proper administration of justice. [Citations.] The showing of conflict of interest necessary to justify so drastic a remedy must be especially persuasive. [Citation.]" (*Millsap v. Superior Court, supra*, 70 Cal.App.4th at p. 201.) Indeed, one court has indicated that there must be "no other alternative available but to recuse the entire district attorney's office." (*Merritt, supra*, 19 Cal.App.4th at p. 1579.)

■ Under the circumstances of the present case, such a drastic remedy was not called for. When the alleged conflict is, as it was here, the fact that an employee of the district attorney's office might be a witness, "It is well settled that merely because an employee may be a potential witness and credibility of that witness may have to be argued by the prosecuting attorney, there is no sufficient basis for that reason alone to recuse an entire prosecutorial office. [Citation.] This rule has been applied even to cases wherein one or more deputy district attorneys are witnesses. [Citation.]" (*People v. Merritt, supra*, 19 Cal.App.4th at p. 1580.) Based upon the potential that an employee or employees of the district attorney's office (none of whom was a deputy district attorney) might testify, the trial court here recused the entire district attorney's office. While we must review that ultimate determination for an abuse of discretion (*People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 746 [76 Cal.Rptr.3d 276, 182 P.3d 600]), that standard of review does not tie our hands.

■ Although "the standard of review for assessing a trial court determination concerning prosecutorial recusal is abuse of discretion . . . that standard should not be interpreted as insulating trial court recusal orders from meaningful appellate review. Where the trial court's decision rests on an error of law . . . the trial court abuses its discretion." (*People v. Superior Court (Humberto S.)*, *supra*, 43 Cal.4th at p. 742.) The court in *Humberto S.* summarized the law regarding prosecutorial recusal generally, and the applicable standards of review: "Penal Code '[s]ection 1424 sets out the standard governing motions to recuse a prosecutor: such a motion "may not be granted unless the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial." [Citation.] The statute "articulates a two-part test: '(i) is there a conflict of interest?; and (ii) is the conflict so severe as to disqualify the district attorney from acting?' " [Citation.]' . . . [M]otions to recuse a prosecutor are reviewed for abuse of discretion. Accordingly, we ask whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are correct, and whether its application of the law to the facts was neither arbitrary nor capricious. [Citation.] Critical to the resolution of this case, we note that when a trial court's decision rests on an error of law, that decision is an abuse of discretion. [Citations.]" (*Id.* at p. 746.)

In another opinion regarding district attorney recusals, handed down the same day, the court succinctly summarized the method of review, "The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712 [76 Cal.Rptr.3d 250, 182 P.3d 579], fns. omitted.) The court also delineated what constitutes a conflict of interest that would warrant recusal under Penal Code section 1424: "[T]he first half of the inquiry asks only whether a 'reasonable possibility' of less than impartial treatment exists, while the second half of the inquiry asks whether any such possibility is so great that *it is more likely than not the defendant will be treated unfairly* during some portion of the criminal proceedings." (*Haraguchi, supra*, at p. 713, italics added.) The court further explained, "the two parts of the test are to some extent continuous rather than discrete, as many factors relevant to the overarching inquiry may be framed in terms of their effect on the existence of a conflict or its gravity." (*Id.* at pp. 717–718, fn. 13, italics omitted.)

In the present case, both the factual findings of the trial court and its conclusions of law are questionable. The trial court did not indicate that it was making specific factual findings in ruling on the recusal motion. The

court instead engaged in a dialogue with counsel about the issues raised by the motion. At one point, the trial court indicated, "The issue is going to be there's going to be one DA employee who is going to be a witness saying allegedly something similar happened to me as happened to Jane Doe Number 1. And there's going to be ten people, nine of them from the DA's office, either impeaching her or supporting what she has to say." Later, the court stated, "I'm saying it puts credibility on Ms. A[.] [the district attorney's office employee] directly at the focus of the case as it does with Jane Doe Number 1 and Jane Doe Number 2." Earlier, the court surmised, "Anybody she's spoken with in the District Attorney's Office, I foresee him [defense counsel] calling that person as a witness. Not only do you have to vouch for the credibility of your witness, you have to vouch for the credibility of perhaps her sister if she spoke to her sister, perhaps her brother-in-law if she spoke to her brother-in-law, perhaps any of these people in your office that she has spoken to about it."

To the extent these statements are factual findings, only the statement indicating that a district attorney's office employee (Ms. A.) might be called as a witness, along with two other district attorney's office employees that she might have spoken to, is supported by substantial evidence.[6] There was evidence before the court, primarily from declarations filed by the district attorney in opposition to the recusal motion, that indicated that Ms. A. told her sister (who worked in another branch of the district attorney's office) about the incident, as well as a district attorney's office investigator. Whether any other potential district attorney's office employee witnesses might be called was pure speculation and was not supported by substantial evidence.[7] Also speculative was the trial court's musings about how and why building an ethical wall around Ms. A. might not work, as detailed below.

More troubling, however, was the court's understanding and application of the law relating to recusal motions. The trial court discussed the applicable law at several points in the proceedings. Prior to ruling on the motion, the court expressed, in essence, that it would be cleaner if the Attorney General, rather than the district attorney, prosecuted the case. After speculating that some nine district attorney's office employees could end up testifying, the court indicated, "I think if all this happens and it's not your DA's Office, let the chips fall where they may and let the prosecutor, whoever it may be,

---

[6] There is no apparent disagreement regarding the importance of the credibility of the charged sexual assault victims in this case. To the extent that defense counsel may attack their credibility at trial, Ms. A.'s potential testimony regarding an uncharged similar incident, and therefore her credibility, could also be important components of the prosecution's case.

[7] As the Attorney General noted at oral argument, the statement by the trial court regarding nine district attorney's office employees being called as witnesses may have been hyperbole emphasizing the trial court's belief that the number of potential district attorney's office witnesses would increase.

prosecute the case." In a similar vein, the court later stated that, "I think when the prosecutor in this case is talking to a jury in this county, there's going to be problems with the case down the road. And if they [the defense] rejected the offers that have been made thus far, this case is headed for trial. *I think the prosecution in the case wants to come in there with as clean hands as possible.*" (Italics added.) At the conclusion of the hearing on the recusal motion, the court attempted to specifically reference the applicable standard to be applied under Penal Code section 1424, in this rather confusing summary: "I don't see that there is a less restrictive alternative that could be found to conclude that since I think this case is going to go to trial, I think that the standard—*there is a reasonable unlikelihood of unfairness that's an issue for the jury,* and I think in this case *it's more appropriate for the prosecution to be conducted by the attorney general,* and I'm going to recuse the DA in this case." (Italics added.) In discussing the possibility of less drastic alternatives, the court indicated that "compartmentaliz[ing]" Ms. A. to prevent discussion of the case with her might not work, speculating that "there's people out there that won't understand, won't get the message, or inadvertently do things that they think are the correct things to do. But *there's a potential conflict* between what's going on, and I just think *it's going to be hard for the prosecutor to beat the—*" (Italics added; incomplete sentence in original.) Despite the trial court's statement at one point that "I understand what the standard is," such an understanding is not at all clear from the record; in any event, it appears that the court did not apply the appropriate standard.

■ As the court explained in *Haraguchi,* in order for a conflict to rise to the level necessary to recuse an individual district attorney or an entire district attorney's office, there must be "an actual likelihood of unfair treatment." (*People v. Haraguchi, supra,* 43 Cal.4th at p. 719, italics omitted.) "[U]nseemliness alone is not a basis for recusal. [Penal Code] [s]ection 1424 'does not allow disqualification merely because the district attorney's further participation in the prosecution would be unseemly, would *appear* improper, or would tend to reduce public confidence in the impartiality and integrity of the criminal justice system.' [Citations.] Only an *actual likelihood of unfair treatment,* not a subjective perception of impropriety, can warrant a court taking the significant step of recusing an individual prosecutor or prosecutor's office." (*Ibid.,* original italics.) In other words, in order for a conflict to lead to recusal under section 1424, there must be a " 'reasonable possibility' " that the prosecutor "would fail to exercise the discretionary duties of her office in a fair and evenhanded manner." (43 Cal.4th at p. 719.) As another court stated, "The prosecutor's degree of comfort or self-imposed pressure has no bearing on whether a conflict exists or whether a defendant will receive a fair trial. The goal of the trial judge is not to discover the prosecutorial agency that will be most 'comfortable' handling any particular case or trial, but

whether a conflict exists that is so grave that it is unlikely the defendant will receive a fair trial. . . . By failing to apply the correct legal standard, the trial court abused its discretion." (*People v. Petrisca* (2006) 138 Cal.App.4th 189, 196 [41 Cal.Rptr.3d 182].) Thus the trial court's feeling that it would be cleaner or better for the Attorney General to handle the case, or that it would be "more appropriate" for that office to conduct the prosecution, was not an application of the appropriate test under section 1424.

The trial court did not identify any evidence of a conflict of interest under the correct standard that rose to the level required to recuse the entire district attorney's office, even indicating at one point that there was only a *potential* conflict. In fact, some of the trial court's statements could be interpreted as factual findings that no such conflict existed. In *Petrisca*, the court found that "The lack of evidence as to any conflict of interest is further demonstrated by the trial court's own separate finding that 'the District Attorney's Office has handled the case appropriately to date' and that 'all charging decisions that were made were handled in an appropriate fashion.' " (*People v. Petrisca, supra,* 138 Cal.App.4th at p. 197.) Similarly in the present case, the trial court twice emphasized that it felt the district attorney's office had handled defendant's case evenhandedly. For example, the court stated, "I don't think your offers have been unreasonable or out of line. I think . . . they are offers that recognize the strength of the case, that recognize the problems in the case. I have no problem with that." As previously discussed, the thrust of defendant's motion was that the district attorney's office would not fairly evaluate his case or evenhandedly exercise its discretion. The trial court apparently rejected that basis for recusal.

Instead, the trial court determined that there was a possible conflict arising from the fact that a deputy of that office potentially would be faced with examining and arguing the credibility of certain fellow employees. The court appeared to extrapolate from the fact that Ms. A. might testify, and that two other district attorney's office employees[8] then might be called as witnesses to impeach her credibility, to a "parade of horrors" worst case scenario where many district attorney's office employees would testify, presumably based upon the court's speculation that "walling off" Ms. A. (so that other employees would not talk with her about her potential testimony) would not be successful. The court did not identify how or why the existence of the identified three potential district attorney's office employee witnesses in the case would constitute a conflict of interest, as that term is used in Penal Code section 1424, or, if it did constitute a conflict of interest, how it could possibly rise to the level required to recuse the entire office. Other than its speculative analysis of "walling off" Ms. A., the court did not explore other possible

---

[8] Again, the three identified potential district attorney's office employee witnesses were clerical or investigator staff, not deputy district attorneys.

means, short of recusing the entire district attorney's office, of protecting against a conflict that would be likely to deny defendant a fair trial, including transferring the case to a branch office other than the one where Ms. A. worked.[9]

The trial court based its finding of a conflict requiring recusal on its stated belief that the district attorney handling the case would have to "vouch" for the credibility of one or more of its own employees. As the Attorney General pointed out at oral argument, if the trial court meant the term "vouch" literally, such conduct would always be improper and objectionable, whether or not the witness was an employee of the district attorney's office. If the court meant that a conflict arose sufficient to justify recusal of the entire district attorney's office because the deputy district attorney would have to argue regarding the credibility of district attorney's office employee witnesses, then its reasoning is still faulty. Taken to its logical conclusion, if the trial court's general reasoning were correct in this regard, the district attorney's office would have to be recused whenever a potential witness was an employee, as credibility of witnesses is always an issue that the deputy district attorney may have to argue. That is simply not what the statute, or settled case law, indicates.

The trial court did not explain the underpinnings of its apparent belief that recusal is required generally when employees of the district attorney's office may be called as witnesses. The trial court did indicate that the testimony of Ms. A. would be a focal point of the trial.[10] The court did not, however, explain why that would require recusal when there was no evidence of a likelihood of unfair treatment of defendant. Why does the calling of an employee of the district attorney's office as a witness create a conflict, and under what circumstances does that conflict rise to the level necessitating recusal? The *Younger* case (*Younger, supra*, 86 Cal.App.3d at pp. 204–211), even though it involved a pre-Penal Code section 1424 recusal motion based upon an alleged violation of the California Rules of Professional Conduct,

---

[9] The Alameda County District Attorney's office has 11 branch offices, including five that handle general criminal matters. Other branches handle specialized prosecutions such as domestic violence, consumer fraud, etc. (<http://www.alcoda.org> [as of July 31, 2009].) Transferring the case to another branch office would presumably lessen any potential that the deputy handling the case would be impacted by daily interaction with Ms. A., thereby lessening any potential of unfair treatment. Focusing on the basis of the trial court's recusal order, such a transfer would assist in "walling-off" Ms. A. from the prosecution of the case and, along with other efforts, lessen the likelihood of her discussion of the matter with coworkers, since the case would not be a part of the day-to-day workings in Ms. A.'s branch office.

[10] The trial court at one point indicated that "I think the prosecutors are in a very awkward situation in arguing that all three of the victims are in a different position. I'm saying it puts credibility on Ms. A. directly at the focus of the case as it does with Jane Doe Number 1 and Jane Doe Number 2."

provides insight into these issues. The court discussed at length the potential conflicts of interest that might arguably arise when a deputy district attorney (other than the deputy handling the case) was going to be called as a witness in the prosecution of a defendant. The court ruled out potential conflicts that might arise for private counsel in a similar situation, such as having a financial or partisan interest in the outcome of the case (due to the district attorney's lack of any financial interest in the outcome and the prosecutor's overriding ethical duty to see that justice is done); the so-called "role conflict" caused when one attorney acts as both advocate and witness (inapplicable because the deputy district attorney witness was not the deputy prosecuting the case); the appearance of interest (as district attorney the witness was not an advocate and might more easily maintain his objectivity); and the potential of too much weight being given to the witness because he was a district attorney's office employee (not cured by having Attorney General handle case). Similarly in the present case, none of these types of conflicts is created by the potentiality of a district attorney's office employee being a witness. The *Younger* court then turned to the remaining primary contention of conflict—that the prosecutor would be required to argue the credibility of a fellow deputy district attorney. (*Younger, supra,* at pp. 205–209.) It is precisely this alleged conflict that led the trial court here to recuse the district attorney's office.

With regard to the potential of the prosecuting deputy district attorney's having to argue the credibility of a fellow employee (there a fellow deputy district attorney), *Younger* had this to say, "Just what it is that real parties find improper in that prospect is not specified. We perceive no impropriety, apparent or real. If [the witness] were a district attorney's investigator rather than a trial deputy, there could be no claim of impropriety in the trial prosecutor's arguing his credibility, and no basis is apparent upon which right is changed to wrong by the fact that [the witness] is a deputy district attorney. The prosecutor may be called upon to argue the credibility of any or all prosecution witnesses, and we fail to perceive why [the witness's] credibility would present any special problem. . . . Neither a prosecutor nor any other advocate vouches for the credibility of the witnesses he presents and, indeed, as mentioned earlier, may not ethically do so. From the standpoint of appearances, we do not believe either the jury or the general public would think it any more improper for the trial prosecutor to argue the credibility of another deputy district attorney than that of an investigator employed in the district attorney's office. Nor do we believe they would perceive any substantial distinction between another district attorney's arguing [the witness's] credibility and a deputy attorney general's doing the same thing." (*Younger, supra,* 86 Cal.App.3d at p. 209, cited with approval in *People v. Hernandez* (2003) 30 Cal.4th 835, 854 [134 Cal.Rptr.2d 602, 69 P.3d 446] & *People v. Snow, supra,* 30 Cal.4th at p. 87.)

Thus, the *Younger* court concluded that the fact that another deputy district attorney might be called as a witness did not lead to the conclusion that recusal of the entire district attorney's office was necessary to preserve the integrity of the factfinding process or the appearance of fairness at trial.[11] (*Younger, supra,* 186 Cal.App.3d at pp. 191–192.) The testimony of Ms. A. in the present case would arguably be more central to the facts at issue than was the district attorney's office employee testimony in *Younger, supra,* at page 209, which concerned only the circumstances of an identification during a photographic lineup. However, under the reasoning of the *Younger* court, that fact alone should not lead to recusal of the district attorney's office, as the integrity of the factfinding process would still not require that the Attorney General handle the case.[12]

In cases decided after the enactment of Penal Code section 1424, the Supreme Court has explained why, when the specific deputy district attorney prosecuting the case is a witness, recusal may be necessary, for "if she became a witness she and the defense attorneys would face the awkward task of arguing [her] credibility to the jury, and because the jury might find it difficult to separate her roles as prosecutor and witness. [Citation.]" (*People v. Hernandez, supra,* 30 Cal.4th at p. 854.) Even in that situation, however, recusal of the entire office is not necessarily called for. The court has reached a similar conclusion when the potential witness is a deputy district attorney other than the individual handling the case. (*People v. Vasquez* (2006) 39 Cal.4th 47, 58, fn. 3 [45 Cal.Rptr.3d 372, 137 P.3d 199] [fact that defense intended to call deputy district attorney as a witness did not itself require office's disqualification].)

Here, the potential for conflict is even more remote, as it is neither the deputy district attorney herself who is the potential witness nor another deputy district attorney, but support staff employees. The court has specifically indicated that the mere fact that one or more employees of a district attorney's office may be called as a witness does not require recusal of the entire office. As the court stated in *People v. Snow, supra,* 30 Cal.4th at pages 86–87, "[w]e note . . . that recusal of an entire district attorney's office, especially a large one such as Los Angeles County's, has generally not been held required merely because one or more employees of that office are

---

[11] The standard here applied by *Younger, supra,* 86 Cal.App.3d 180, insofar as it focused on the *appearance* of fairness at trial, would no longer be appropriate under Penal Code section 1424, which requires a showing that it is *unlikely* that the defendant would receive a fair trial.

[12] If the concern is that the jury might be inclined to give more weight to a witness employed by the district attorney's office, we agree with *Younger, supra,* 86 Cal.App.3d at page 207, that having the Attorney General prosecute the case would not cure this problem. (See discussion, *ante,* at pp. 1487–1488.) However, any concern about that issue could be resolved by the Attorney General's offer at oral argument in this matter to enter into an agreement that the place of employment of the witnesses at issue would not be inquired into in front of the jury.

witnesses in the case. [Citations.]" Such a recusal is not required under Penal Code section 1424 in order to assure that defendant receives a fair trial.

Both the trial court and defendant below (as well as on appeal) relied heavily upon the case of *People v. Jenan, supra,* 140 Cal.App.4th 782. The *Jenan* court summarized the law under Penal Code section 1424 as follows: "Although the statute fails to 'specify whether the disqualifying conflict must be "actual" or need only generate the "appearance of conflict," ' the Supreme Court defines a conflict allowing recusal as one 'of such gravity as to render it *unlikely* that defendant will receive a fair trial unless recusal is ordered' [citation] and construes the statute as prohibiting recusal solely on the ground of the appearance of impropriety . . . ." " '[T]he likelihood that the defendant will not receive a fair trial . . . must be real, not merely apparent, and must rise to the level of a *likelihood* of unfairness.' [Citation.]" (*Jenan, supra,* at pp. 791–792, original italics.) The court then applied the abuse of discretion standard of review and determined that the trial court did not err in recusing the entire district attorney's office when a deputy district attorney and a district attorney's office investigator would likely testify at the trial. The trial court in *Jenan* had reasoned as follows: " 'I'm envisioning a situation where his fellow cohort [the district attorney trying the case] would have to stand up and argue for his credibility, along with the credibility of a DA investigator . . .' . . . . 'That's where I think a recusal situation comes about.' " (*Id.* at p. 792.) The appellate court concluded, "On the record here, we defer to the sound exercise of the court's discretion to find that nothing could diminish the '*likelihood* of unfairness' to the Jenans if another member of a relatively small district attorney's office were to argue to a jury the credibility of two colleagues who witnessed the charged crimes. [Citation.]" (*Id.* at p. 793, original italics.)

Even if correctly decided, *People v. Jenan, supra,* 140 Cal.App.4th 782 is factually distinguishable from the present case. Unlike the Alameda County District Attorney's office, the district attorney's office involved in the *Jenan* case was rather small in size.[13] Furthermore, in *Jenan* there was no issue discussed on appeal regarding whether or not the trial court made an error of law. Also, in *Jenan* the deputy district attorney and district attorney's office investigator were the only witnesses to the charged offense. Here, if called at

[13] The appellate court described the size of the involved district attorney's office as "relatively small." The *Jenan* case arose in Tulare County. The Alameda County District Attorney's office is, on the other hand, relatively large, currently employing some 151 deputy district attorneys. (Verified July 10, 2009, by telephone call to the payroll records clerk in the Alameda County Office of Human Resource Services; see also Mart, *D.A. to Take Ten-percent Pay Cut,* Martinez News-Gazette (May 1, 2009).)

There are 58 counties in the state of California; Alameda County has the eighth largest district attorney's office in the state. (Verified July 20, 2009, by e-mail from the publications director of the California District Attorneys Association.)

all, Ms. A. would testify regarding an uncharged, and unchargeable due to the running of the statute of limitations, prior incident. Any other district attorney's office employees that might conceivably testify would do so only with regard to her credibility. Finally, the appellate court in *Jenan* extrapolated from the trial court's finding of conflict due to the potential requirement of a deputy district attorney's having to argue for the credibility of fellow employees, to a conclusion that a likelihood of unfairness resulted. There was no explanation as to why such argument regarding credibility creates a conflict, and, if it does, why that supports a finding of a likelihood of unfairness. Here the trial court similarly found a conflict from the mere fact that a deputy district attorney could be called upon to argue the credibility of a fellow employee, without explanation as to how that created a conflict. However the trial court did not appear to specifically conclude that, whatever the basis for that conflict, a likelihood of unfairness would result.[14] Indeed, the trial court's prior statements indicated that it did not feel the district attorney's office was handling the case inappropriately. Under these circumstances, the testimony of a witness or witnesses from the office prosecuting the case would not undermine the factfinding process.

■ In conclusion, to the extent the trial court made factual findings in this case, some were not supported by substantial evidence. Further, the trial court applied the wrong standard of law in determining that the motion to recuse should be granted under Penal Code section 1424. Finally, given the facts of the case, the trial court's determination that recusal of the entire district attorney's office was called for was an abuse of discretion, as less drastic alternatives (such as transferring the case to another branch office and further "walling-off" Ms. A., as suggested by the prosecution below) would suffice under the circumstances to prevent any actual conflict of interest that would rise to the level of being " ' "so grave as to render it unlikely that defendant would receive fair treatment" ' " as required by Penal Code section 1424. (*People v. Petrisca, supra,* 138 Cal.App.4th at p. 194.)

■ As Justice Werdegar recently stated, "Prosecutors are public fiduciaries. They are servants of the People, obliged to pursue impartially in each case the interests of justice and of the community as a whole. When conflicts arise that compromise their ability to do so, they can and should be recused. But defendants bear the burden of demonstrating a genuine conflict; in the absence of any such conflict, a trial court should not interfere with the People's prerogative to select who is to represent them." (*People v. Haraguchi, supra,* 43 Cal.4th at p. 709, fn. omitted.) Defendant did not meet his burden of demonstrating a genuine conflict in this case.

---

[14] Again, it is difficult to ascertain from the record what the trial court's precise conclusions were.

## DISPOSITION

The order recusing the district attorney's office is reversed and the matter is remanded to the trial court for action consistent with this opinion.

Reardon, Acting P. J., concurred. Rivera, J., concurred in the result.