Filed 5/28/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES JENSEN,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>Respondent;<br><br>THE PEOPLE,<br><br>Real Party in Interest. | H048548<br>(Santa Clara County<br>Super. Ct. No. C2010724) |

Petitioner James Jensen is charged as a coconspirator in a felony indictment alleging a quid pro quo scheme under which members of the Santa Clara County Sheriff's Department issued hard-to-obtain concealed firearms permits in exchange for substantial monetary donations to an independent expenditure committee supporting the reelection campaign of Santa Clara County Sheriff Laurie Smith. Jensen is a sheriff's department captain identified in the indictment as the individual within the sheriff's department who facilitated the conspiracy.

Jensen moved to disqualify the Santa Clara County District Attorney's Office from prosecuting him, alleging that the district attorney's office leaked grand jury transcripts to the press four days before the transcripts became public which created a conflict of interest requiring disqualification. He also joined in codefendant Christopher Schumb's motion to disqualify the office due to Schumb's friendship with both Santa Clara County District Attorney Jeff Rosen and Rosen's chief assistant, Jay Boyarsky.

The trial court denied the disqualification motions without holding an evidentiary hearing, and Jensen now seeks writ relief here. Jensen argues the trial court should have granted his motion because he identified three bases for finding a conflict of interest requiring disqualification: the grand jury transcript leak; Schumb's relationships with Rosen and Boyarsky; and a dispute between Rosen and Sheriff Smith about access to recordings of county jail inmate phone calls. For the reasons stated here, we will deny Jensen's petition.

## I.    TRIAL COURT PROCEEDINGS

### A. INDICTMENT ALLEGATIONS

Jensen is charged by indictment with 10 felony counts: conspiring to bribe an executive officer (Pen. Code, §§ 182, 67); bribing an executive officer (Pen. Code, § 67); conspiring to file a concealed carry application with a false statement (Pen. Code, § 26180, subd. (a)); and seven counts of falsifying a public record by a custodial officer (Gov. Code, § 6200).[1] Jensen's alleged coconspirators are Christopher Schumb (a private attorney), Harpaul Nahal (a private attorney), and Michael Nichols (a local gun parts manufacturer). Unindicted coconspirators include three men affiliated with a private executive security company called AS Solution, Inc., among them Martin Nielsen and the company's CEO, Christian West. We provide here a factual summary based on the overt acts alleged in the indictment.

AS Solution provides contract security services for corporate executives. The company wanted local licenses to carry concealed weapons (CCW licenses), which are difficult to obtain. Nielsen contacted Nichols about the CCW issue in spring 2018. Nielsen and West then had lunch with Nichols, Nahal, and Schumb. At that lunch Schumb described his fundraising efforts for the reelection of Santa Clara County Sheriff

---

[1] Jensen did not include the indictment among the exhibits accompanying his petition in this court. We rely on the copy of the indictment included in the record for codefendant Schumb's petition (case No. H048532).

2

Laurie Smith, and he encouraged Nielsen to attend a SWAT competition where Nielsen could meet Jensen. Nielsen attended the competition and was introduced to Jensen by Nichols. The indictment alleges Nielsen and Jensen agreed at that time to the core conspiracy: "AS Solution's executive protection agents would receive CCW licenses issued by the Sheriff in exchange for a donation from the company."

Nielsen met with Jensen, Nahal, and Nichols in May 2018. They reached an agreement that AS Solution would receive 10 to 12 CCW licenses in return for a $90,000 donation to support Sheriff Smith's reelection. Jensen instructed Nielsen to have his agents use false employer names and positions on their CCW license applications. Nielsen delivered the completed applications to Jensen in summer 2018. Jensen met with Schumb at Schumb's office in fall 2018. Jensen then instructed Nielsen that the first part of the donation would be $45,000 for a $5,000-per-plate fundraiser for the sheriff's reelection campaign. Nielsen delivered a check to Schumb in October 2018 payable to the " 'Santa Clara County Safety Alliance.' " Schumb was the assistant treasurer of an independent expenditure committee with a substantially similar name (the Santa Clara County Public Safety Alliance), whose purpose was to support Sheriff Smith's reelection campaign.

Nielsen complained to Schumb in early 2019 that AS Solution had not yet received any CCW licenses. Schumb called Jensen. Less than a month later, Jensen signed shooting range qualification paperwork for Nielsen's CCW license. Jensen later administered the firearms qualification training for other AS Solution CCW license applicants. Nielsen obtained his CCW license in spring 2019, signed by Sheriff Smith. Jensen later informed Nielsen that he should make the second $45,000 donation to the "Sheriff's Advisory Board."

Based on the foregoing, the grand jury returned the operative indictment against Jensen, Schumb, Nahal, and Nichols. The indictment was filed in the superior court in August 2020. In a press release announcing the indictment, District Attorney Rosen was

3

quoted as follows: " 'CCW licenses should not be given out in exchange for campaign donations. They should not be for sale.' "

## B. MOTIONS TO DISQUALIFY THE DISTRICT ATTORNEY'S OFFICE

Jensen moved to disqualify the entire Santa Clara County District Attorney's Office from prosecuting his case, alleging that it was the district attorney's office who leaked grand jury transcripts to the press four days before the transcripts were to become public by operation of law. (Pen. Code, § 938.1, subd. (b).) He asked the trial court to re-seal the grand jury transcripts. Jensen also joined codefendant Schumb's motion to disqualify, in which Schumb argued that his personal relationships with both District Attorney Rosen and his chief assistant Boyarsky constituted a conflict of interest that made it unlikely Schumb would receive a fair trial.[2]

Jensen's motion noted the grand jury returned the indictment in early August 2020. The motion stated his defense counsel received the grand jury transcripts on August 21, but provided no evidence confirming that date. An article published online by San Jose Inside, dated August 27, 2020, was included as an exhibit to a declaration supporting Jensen's motion. The article quoted verbatim part of Nielsen's testimony before the grand jury. Jensen also included another article from the same media company, dated August 28, 2020, that again quoted the grand jury transcripts and also included the following: "Though absent from the transcript, witnesses to the proceeding say that's when [Sheriff] Smith, visibly overcome with emotion, paused to collect herself and wipe tears from her eyes."

Four prosecutors filed declarations contesting Jensen's allegation that the district attorney's office was responsible for the leak: District Attorney Rosen; his chief assistant Boyarsky; and the two prosecutors present at the grand jury proceedings, Matthew Braker

---

[2] Schumb filed a separate petition in this court (case No. H048532) following the trial court's denial of his disqualification motion, which we address in a separate opinion filed today. That opinion discusses the bases for Schumb's motion in greater detail.

4

and John Chase.  All four prosecutors made the same declaration under penalty of perjury:  Except for the indictment, "I did not disclose to anyone not officially assigned to this case transcripts or other information about the grand jury proceedings in this case.  Nor did I authorize anyone to do so.  Nor am I aware of anyone having done so."

The court denied Jensen's and Schumb's motions to disqualify, and denied Jensen's request to re-seal the grand jury transcripts.   The court reasoned:  "The state of the evidence now is entirely speculative as to the source of that [grand jury transcript] leak.  I don't agree that the motive to leak the information had to be the District Attorney's Office. [¶] I simply think there's plenty of other people who might have that motive.  The leak, frankly, was more about embarrassing the Sheriff than it was, I think, prejudicing the defendants.  So I think there's a lot of speculation going on, but I think it's a serious issue. [¶] I don't think an evidentiary hearing is required, number one, because I don't think recusal is the appropriate remedy, even if a leak is determined and the source can be determined.  So I think that should be investigated, I hope it is, but I don't believe it's the basis for the recusal of the entire District Attorney's Office at this time."

Jensen petitioned for a writ of mandate or prohibition in this court, arguing the trial court abused its discretion in denying the disqualification motion.  We granted his request to stay the trial and issued an order to show cause.  The Attorney General opposed the stay and the petition.  The Santa Clara County District Attorney's Office has not filed pleadings on its own behalf

## II.    DISCUSSION

### A. DISQUALIFICATION UNDER PENAL CODE SECTION 1424

Penal Code section 1424 governs disqualification of a prosecutor:  a disqualification motion "may not be granted unless the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial." (Pen. Code, § 1424, subd. (a)(1); hereafter section 1424.)  The test for disqualification

5

has two parts.  First, the moving party must show a conflict, such that the "circumstances of a case evidence a reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner." (*People v. Conner* (1983) 34 Cal.3d 141, 148; accord *People v. Cannedy* (2009) 176 Cal.App.4th 1474, 1479–1480 (*Cannedy*).)  Second, to warrant disqualification the conflict must be " 'so grave as to render it unlikely that defendant will receive fair treatment during all portions of the criminal proceedings.' " (*People v. Eubanks* (1996) 14 Cal.4th 580, 592 (*Eubanks*).)  We are mindful that section 1424 "does not allow disqualification merely because the district attorney's further participation in the prosecution would be unseemly, would *appear* improper, or would tend to reduce public confidence in the impartiality and integrity of the criminal justice system." (*Eubanks*, at p. 592.)  And the "threshold necessary for recusing an entire office is higher than that for an individual prosecutor." (*Cannedy*, *supra*, 176 Cal.App.4th at p. 1481.)  We review the trial court's ultimate decision on disqualification under the deferential abuse of discretion standard. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.)  We review any factual findings underlying the trial court's decision for substantial evidence. (*Ibid.*)

## B.  THE TRIAL COURT DID NOT ABUSE ITS DISCRETION

Jensen raises three distinct issues that he argues demonstrate a conflict of interest requiring disqualification:  the leak of grand jury transcripts; codefendant Schumb's personal relationships with Rosen and Boyarsky; and the dispute between District Attorney Rosen and Sheriff Smith over access to recordings of jail inmate phone calls.

### 1.  Grand Jury Transcript Leak

Criminal grand jury proceedings are governed by statute in California, with many provisions intended to implement the common law tradition of grand jury secrecy. (*Daily Journal Corp. v. Superior Court* (1999) 20 Cal.4th 1117, 1122.)  Limited categories of people are allowed to attend grand jury proceedings.  With exceptions not relevant here, the main categories are prosecutors (generally deputy district attorneys), a stenographer, a

6

witness when he or she is "actually under examination," and the grand jurors themselves. (Pen. Code, §§ 935, 938, 939.) If an indictment is returned following grand jury proceedings, the stenographer must deliver a transcript of the proceedings to the superior court within 10 days after the indictment is filed. The clerk of the superior court then distributes copies of the transcripts to the prosecutor and defense counsel. (Pen. Code, § 938.1, subd. (a).) The transcript is to remain sealed until 10 days after it is delivered to the defendant (or his or her attorney). Once that 10 days expires, however, the transcript becomes "open to the public unless the court ... determines that there is a reasonable likelihood that making all or any part of the transcript public may prejudice a defendant's right to a fair and impartial trial," in which case the court may seal some or all of the transcript until after trial. (Pen. Code, § 938.1, subd. (b).)

The facts presented to the trial court on this issue are as follows: Jensen was indicted in early August 2020, which triggered the statutory duty for the stenographer to deliver a transcript of the grand jury proceedings to the superior court. Jensen's motion stated he received the transcripts by email on August 21, 2020, but provided no evidence from which we can verify that date. Because the Attorney General does not contest that delivery date, we will assume its accuracy. An article was published online by San Jose Inside on August 27, 2020 containing direct quotes from the grand jury transcripts. That was four days before the transcripts were open to the public under Penal Code section 938.1, subdivision (b). The next day, San Jose Inside published another article with more direct quotes from the grand jury transcripts as well as a statement attributed to a "witness": that Sheriff Smith "paused to collect herself and wipe tears from her eyes" during her grand jury testimony. That media outlet is affiliated with Metro Silicon Valley, the company that the district attorney's office credited with submitting the tip in 2018 that led to the investigation and prosecution underlying this petition. The grand

7

jury transcripts became public by operation of law on August 31, 2020.[3] Four members of the district attorney's office—District Attorney Rosen, his chief assistant, and the two deputies who were present at the grand jury proceedings—declared under penalty of perjury that they did not disclose or authorize disclosure of grand jury transcripts to anyone, nor were they aware of any such disclosure. In addition to denying Jensen's motion to disqualify the district attorney's office, the trial court denied his request to re-seal the grand jury transcripts. (Jensen does not challenge in this petition the trial court's decision to allow the grand jury transcripts to remain open to the public.)

It is clear from the foregoing that San Jose Inside gained access to the grand jury transcripts at least four days before they were opened to the public, a serious concern given the importance of secrecy in grand jury proceedings. It remains a serious issue even though the practical impact of the access was limited because the transcripts became public four days after the first article was published. But Jensen provided only speculation to support his theory that the district attorney's office was responsible for the leak. In opposition were declarations by four members of the district attorney's office broadly and flatly denying any involvement in the leak. The trial court was entitled to credit those declarations and could reasonably conclude that no evidentiary hearing was necessary. The court could further conclude that Jensen failed to prove that the district attorney's office was responsible for the grand jury transcript leak, which was the essence of Jensen's assertion that the district attorney's office had a conflict under section 1424. We find no abuse of discretion on this record. (See *Gonzales v. Nork* (1978) 20 Cal.3d 500, 507.)

Jensen argues "[o]nly someone in the District Attorney's Office with a direct relationship to the case could have been responsible for the leak," and claims the district

---

[3] Jensen states that his counsel "requested that the grand jury transcripts remain under seal due to the intense public scrutiny over the case" at a hearing on August 31, but cites no evidence in the record to support that assertion.

attorney's office had a motive to "prejudice the public and potential jury pool against the defendants." (Boldface omitted.) But the district attorney's office is not the only entity with access to the grand jury transcripts, and Jensen does not explain why the district attorney's office would risk jeopardizing the entire prosecution by leaking information. At the very least, the transcripts were also accessible to the stenographer who prepared them, court staff, and attorneys for the charged defendants. And information about a grand jury witness's demeanor that would not appear in the transcripts (i.e., Sheriff Smith appearing overcome with emotion) could also have come from anyone present during the grand jury proceedings, if indeed it was even accurate. Presented with various plausible scenarios, the trial court could reasonably conclude Jensen did not demonstrate that the district attorney's office was the source of the leak.

Jensen contends the court should have at least held an evidentiary hearing to allow defense counsel to examine the four attorneys about their declarations. He likens his case to *Rosato v. Superior Court* (1975) 51 Cal.App.3d 190, where a trial court conducted a hearing and held news reporters in contempt for refusing to disclose who provided them with a grand jury transcript that remained sealed. (*Id.* at pp. 200–204.) But the purpose of a hearing in *Rosato* was to investigate who leaked transcripts to the press in violation of the court's order keeping them under seal. Even setting aside that distinction, the facts before the trial court here were simply inadequate to compel an evidentiary hearing. (*Dean v. Dean* (1963) 59 Cal.2d 655, 657 ["[A]n appellate court will not interfere with the trial court's action unless, as a matter of law, an abuse of discretion is shown."].) Though a different trial court could have reasonably concluded that an evidentiary hearing was appropriate, "we are not authorized to substitute our judgment for that of the trial judge; the trial court's exercise of discretion will not be disturbed in the absence of a clear showing of abuse." (*Gilbert v. National Corp. for Housing Partnerships* (1999) 71 Cal.App.4th 1240, 1250.)

9

Jensen's other arguments are unpersuasive because they all presuppose the district attorney's office leaked the grand jury transcripts, such as that the leak is evidence that the district attorney's office is treating him unfairly and that the leak is "inextricably linked to the conflict of interest identified by Schumb." These arguments fail because we find no abuse of discretion in the trial court's conclusion that those theories are too speculative to support a finding that the district attorney's office was responsible for the leak. We also do not reach his arguments related to the likelihood of receiving a fair trial because that question becomes relevant only after a defendant has shown a conflict under section 1424, which Jensen has failed to do here.

### 2. Schumb's Relationships with Rosen and Boyarsky

Jensen argues that codefendant Schumb's friendships with Rosen and Boyarsky disqualify the entire district attorney's office from prosecuting any of the defendants in this case. Jensen acknowledges that he himself "does not have a personal relationship with Rosen or Boyarsky."

In our separate opinion filed today resolving Schumb's petition for writ of mandate (case No. H048532), we conclude that the entire Santa Clara County District Attorney's Office must be disqualified from prosecuting Schumb because Schumb's friendships with Rosen and Boyarsky create a conflict and make it unlikely Schumb will receive a fair trial if prosecuted by that office. But relationship-based conflicts of interest relate to the individuals involved, meaning Schumb's conflict is personal to Schumb. As Jensen concedes, he has no personal relationship with Rosen or Boyarsky. Unlike Schumb, he will not be calling them as trial witnesses, and he has no history of fundraising for them. There is no conflict between Jensen and the district attorney's office that would support disqualification. Severing Schumb's prosecution from that of Jensen and the other codefendants will resolve any issues related to Schumb's conflict with Rosen and Boyarsky and will remove any incentive for the prosecution to try the case more vigorously than the evidence merits.

10

Jensen argues that as a matter of his "rights to due process and a fair trial, not to mention basic principles of judicial economy, it would make no sense" to disqualify the district attorney's office from prosecuting Schumb without also disqualifying it from prosecuting Jensen. But a defendant must satisfy specific requirements under section 1424, and we have found the trial court did not abuse its discretion in concluding Jensen has not done so.

### 3. Jail Phone Call Recordings

Jensen argues that a dispute between the district attorney and Sheriff Smith over access to recordings of jail inmate phone calls places him "in the middle of this tangled web of political and personal connections" and the district attorney's office must therefore be disqualified. Jensen has arguably forfeited this issue by not raising it in the trial court, other than by implication in joining Schumb's motion. Assuming it was preserved, Jensen provided no evidence that he had any personal involvement in the apparent dispute between District Attorney Rosen and Sheriff Smith. On this record, the trial court could reasonably conclude that Jensen did not meet his burden to show a conflict of interest—much less one requiring disqualification—based on the mere existence of a dispute between the district attorney and the elected official with supervisory power over Jensen. We find no abuse of discretion as to this issue.

Jensen also argues that the trial court should have held an evidentiary hearing about the jail calls dispute because "it is vital that Captain Jensen be afforded the opportunity to explore the nature of the relationships between his co-defendant, the Sheriff, and the District Attorney." Jensen forfeited that argument because he did not request an evidentiary hearing about the issue in the trial court; his request for an evidentiary hearing was limited to the leak of the grand jury transcripts. (*In re Marriage of Even-King & King* (2000) 80 Cal.App.4th 92, 117 ["A party who fails to raise an issue in the trial court has therefore waived the right to do so on appeal."].) A trial court does not abuse its discretion by not granting relief that was not requested.

11

### III. DISPOSITION

Jensen's petition for writ of mandate or prohibition is denied. Upon finality of this opinion, the temporary stay order is vacated.

_____
Grover, J.

**WE CONCUR:**


_____
Elia, Acting P. J.



_____
Wiseman, J.\*




**H048548 -** *Jensen v. Superior Court*
_____
\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court | Santa Clara County Superior Court<br>Case No.: C2010724 |
| Trial Judge | Hon. Eric S. Geffon |
| Attorneys for Petitioner<br>James Jensen | Harry S. Stern<br>Rains Lucia Stern St. Phalle & Silver, PC |
| Attorneys for Respondent<br>The Superior Court of Santa Clara County<br><br>Attorneys for Real Party in Interest<br>The People | Xavier Becerra<br>  Attorney General of California<br>Lance E. Winters<br>  Chief Assistant Attorney General<br>Jeffrey M. Laurence<br>  Senior Assistant Attorney General<br>Seth K. Schalit<br>  Supervising Deputy Attorney General<br>Bridget Billeter<br>  Deputy Attorney General |