[No. F048121. Fifth Dist. June 20, 2006.]

THE PEOPLE, Plaintiff and Appellant, v.
ALAN DALE JENAN, et al., Defendants and Respondents.

784

**Counsel**

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Charles A. French and Angelo S. Edralin, Deputy Attorneys General, for Plaintiff and Appellant.

Richard S. Doctoroff, under appointment by the Court of Appeal, for Defendant and Respondent Alan Dale Jenan.

John Patrick Moore for Defendant and Respondent Roger Lewis Jenan.

**Opinion**

**GOMES, J.**—The sole question before us, pursuant to statutory authorization of appeals "on questions of law alone" from orders recusing the district attorney, is whether the court's order recusing the entire district attorney's office was an abuse of discretion. (Pen. Code, §§ 1235, subd. (a), 1424, subd. (a)(1), (a)(2).[1]) We will answer that question in the negative and will affirm the order.

### PROCEDURAL HISTORY

On December 9, 2004, the district attorney's office filed a complaint that, inter alia, charged that Alan Dale Jenan (Alan) and Roger Lewis Jenan (Roger) knowingly and maliciously attempted to dissuade Eric Grant, a

---

[1] All statutory references are to the Penal Code.

district attorney's investigator, from attending or testifying at a prior criminal proceeding pending against the Jenans (§ 136.1, subd. (b)(2)), willfully threatened to take his property by civil legal process on the basis of assistance or information he provided for that proceeding (§ 140, subd. (a)), and committed those crimes while on bail or own recognizance release (§ 12022.1, subd. (b)).[2]

On April 1, 2005, Roger filed a motion to recuse the entire district attorney's office or, alternatively, to recuse David Alavezos, a deputy district attorney who witnessed the charged crimes. On April 8, 2005, the district attorney's office filed an opposition to Roger's motion. On April 18, 2005, Alan joined in Roger's motion. On April 19, 2005, the Attorney General filed an opposition to Roger's motion. On April 20, 2005, the court heard argument, ordered the entire district attorney's office recused, and granted the Attorney General's request for a stay pending our review. (§§ 1235, subd. (a), 1424, subd. (a)(1), (a)(2).)

## FACTUAL HISTORY

The parties litigated the motion on the basis of, inter alia, the transcript the district attorney's office prepared of the tape-recorded conversation Alavezos and Grant initiated with Alan and Roger on October 21, 2004.

"[Grant]: (unint.) Today's date is 10/21/04 and we're gonna be attempting to serve a discovery letter to Alan Jenan and Roger Jenan at their property. Along with myself, Eric Grant, assistant chief investigator with Tulare County district attorney's office is Deputy District Attorney David Alavezos.

"[Alavezos]: Alright let's go. If we can get them to sign, appreciate it.

"[Grant]: Okay. I don't have a pen. Well nobody answers at Roger's house. That's Alan's house. Let's see if Roger home. Yeah, there's some dogs loose up here too, so . . . Hi there. Is Roger around or Alan?

"[Unidentified]: Yeah, What did you come back out for?

"[Grant]: I just need to serve 'em some paperwork.

"[Unidentified]: (unint.)

---

[2] For brevity and clarity, later references to the Jenans jointly will be by last name only but later references to the Jenans severally will be by first names only. No disrespect is intended. Later references to all other people, none of whom has the same last name as anyone else here, will be by last names only.

"[Grant]: A discovery letter.

"[Unidentified]: (unint.)

"[Grant]: Okay. Oh boy.

"[Roger]: What are you up to?

"[Grant]: I just need to give you some paperwork Roger.

"[Roger]: You're gonna give us, all the paperwork.

"[Grant]: Yeah, we gotta give you all the paperwork. Some discovery.

"[Roger]: Of who you're gonna call or something?

"[Grant]: Well some paper—

"[Alan]: You know, 'cause (unint.) I . . . put in a . . . there's some discovery. I want complete total (unint).

"[Roger]: I want 'em to dismiss the charges. Are you . . . are you David?

"[Alavezos]: Yes, I'm David.

"[Roger]: You wanna discuss dismissing these charges at all?

"[Alavezos]: Well we're not gonna do that.

"[Roger]: Why not? You have no case. You're gonna get deeper and deeper into this thing. You have no case. It's been abated, you know that. You know commercial process is a pretty strong. I really, really, really don't wanna have to sue you guys. I really don't want to and especially the judge. But you just keep pushing us. Why don't you talk to . . . to Carol B or whoever it is down

here about a reasonable discussion on dismissing these charges.

"[Unidentified]: (unint.) a copy.

"[Roger]: Because, you know, the thing has been abated.

"[Alavezos]: Abatement does not function in criminal courts.

"[Grant]: We're not here to negotiate the abatement or anything.

"[Roger]: Well okay. I—

"[Grant]: We're (unint.) serving you—

"[Roger]:—I can negotiate with you, can't I?

"[Alavezos]: Well, right. I'm not here to dismiss the charges and I don't believe that you're going to be accepting anything but a dismissal. So—

"[Roger]: Well yeah, but—

"[Alavezos]: —there's no room to discuss.

"[Roger]: I can explain to you why you're going to dismiss them eventually.

"[Alavezos]: You can say—

"[Roger]: So you might as well do it now.

"[Alavezos]: But I'm not going to discuss it. It won't happen.

"[Roger]: Well okay, then I'm going tell the judge that you refused to negotiate.

"[Alavezos]: Well you can tell him.

"[Roger]: That's very dishonorable, you know that?

"[Alavezos]: No, it's not dishonorable.

"[Roger]: Oh yes it is, if you won't discuss it. It puts you in a very dishonorable position. I will be obliged to tell the judge that.

"[Alavezos]: Well you go ahead.

"[Grant]: You need to review the documents I just gave you Roger.

"[Roger]: There won't be a trial.

"[Grant]: Review the documents I just gave you and there's an acknowledgment that you received . . . that are receiving those documents.

"[Roger]: I'm not signing anything. Okay.

"[Grant]: Alan, what about you?

"[Alan]: What are you talking about?

"[Roger]: He wants me to sign—

"[Grant]: There's an acknowledgment that you are receiving those documents.

"[Alan]: Well I don't know, (unint.) why not, because you got in here that you don't wanna give me the trial transcripts of where (unint.) and that's what I want.

"[Alavezos]: Alright so. You can also read there that I told you that needs to be something that you ask the court for.

"[Alan]: I already have.

"[Alavezos]: So that's different than me. I don't have 'em myself yet.

"[Alan]: Because once you read those, you really don't have a case, period. You don't have a case. Double jeopardy is illegal.

"[Grant]: So Alan, do you wanna sign that acknowledgment that you received that paperwork?

"[Alan]: Not yet, not until I read it.

"[Roger]: I'm not gonna sign it. I'm not even gonna bother to read it right now. I'm not gonna sign anything. I'm not acknowledging that you have any . . . any subject matter. [W]hatsoever to have jurisdiction over. You know that you have to have subject matter to have a case. Is that true? Did you learn that in law school? And you have to have jurisdiction over it.

"[Grant]: Roger, your . . . your opinion is what—

"[Roger]: Go find me the law that made PC115(a) and PC523 and 519, a law. I want the . . . the title of it, the enactment clause for it and the body of the text and the printing and the publishing through the legislation and without that you don't have a law. If there's no law, then there can't be a crime violating it. There's no crime.

"[Grant]: Roger, today—

"[Roger]: The codes don't count.

"[Grant]: All we're doing is giving you this paperwork today. So if you don't wanna sign it, then—

"[Roger]: That's why you're gonna dismiss it. There's one of the reasons. But I'm telling you, you're getting in deeper and deeper. Those liens now that are chalking up against you are not fun things.

"[Grant]: Well are you gonna file those liens?

"[Alan]: You bet.

"[Roger]: We are going to collect them one way or the other.

"[Grant]: How are you gonna collect them?

"[Roger]: I'm not telling you my secrets.

"[Grant]: Okay.

"[Roger]: There . . . they're legitimate commercial liens.

"[Grant]: They're not legitimate.

"[Grant]: You're not gonna tell me.

"[Roger]: And you're gonna . . . you're gonna get to find out, I think.

"[Grant]: Oh, what are you gonna do to me?

"[Alavezos]: Well what are these?

"[Roger]: I'm not threatening you with anything.

"[Grant]: You're not?

"[Alan]: Well what . . . what are you talking about here?

"[Alavezos]: What is it?

"[Alan]: Stamp . . . date [*sic*] stamp pages.

"[Alavezos]: Those are the things that . . . the boxes of things that I gave you guys.

"[Roger]: That's bate stamped on the bottom isn't it?

"[Alavezos]: Yes, date [*sic*] stamped is the number stamped at the bottom of it.

"[Alan]: I've already signed for those.

"[Alavezos]: You have and that's just . . . the letter just says this is what has been given so far. It has a list of the witnesses. It tells you how to go about uh, getting more uh, of stuff, um, like tapes and stuff like that, the procedure for doing that. Uh,—

"[Roger]: Well the only way we can sign this is through reserve our rights.

"[Alan]: Why . . . why you wanna sign it?

"[Roger]: Because I want the witness list.

"[Alan]: I don't think (unint.) it anyway. You don't have to sign it. He's not a witness.

"[Roger]: Okay. We'll just keep it (unint).

"[Alavezos]: Well (unint).

"[Grant]: Have a good day.

"[Roger]: Um, you can do one thing for me?

"[Grant]: What's that.

"[Roger]: Find the law that says it's against the law to file a UCC1, a public notice with (unint).

"[Alavezos]: I'm not gonna discuss that with you.

"[Roger]: Uh,—

"[Alavezos]: But I will tell you that um, the court I believe set date until you, when you can file motion and since you're representing yourself, that's something that you're gonna have to . . . to figure out. That's what you gotta do.

"[Roger]: Why . . . why would you file a motion for a law that doesn't exist?

"[Alavezos]: There's a lot of different things. I'm not your attorney, so I can't explain that to you, but defense attorney's [sic] file motions when they feel that there's no law that exists.

"[Roger]: He . . . the court has no jurisdiction.

"[Alavezos]: Then you're gonna have to file for mo . . . motion with the court that explains that.

"[Alan]: No, no they don't have a case. Well we'll do some other stuff, you can get ready for that.

"[Grant]: Alright. Well we're ready.

"[Alavezos:] The time is approximately 1:35 and that's the end of this contact. They refused to sign the acknowledgment and we are now leaving the property located on Santa Fe, where the Jenan's [sic] reside."

## DISCUSSION

■ Section 1424 states the grounds on which a defendant can recuse a district attorney. The statute provides that a recusal motion "may not be granted unless the evidence shows that a conflict of interest exists that would render it *unlikely* that the defendant would receive a fair trial." (§ 1424, subd. (a)(1), italics added.) The statute supersedes the case law rule that previously allowed a defendant to recuse a district attorney by showing "a conflict of interest which might prejudice him [or her] against the accused and thereby affect, *or appear to affect*, his [or her] ability to impartially perform the discretionary functions of his [or her] office." (*People v. Superior Court (Greer)* (1977) 19 Cal.3d 255, 269 [137 Cal.Rptr. 476, 561 P.2d 1164], italics added.) The statute was a legislative response to a "substantial increase in the number of unnecessary prosecutorial recusals under the 'appearance of conflict' standard set forth in [*Greer*]." (*People v. Merritt* (1993) 19 Cal.App.4th 1573, 1578 [24 Cal.Rptr.2d 177] (*Merritt*).)

■ Although the statute fails to "specify whether the disqualifying conflict must be 'actual' or need only generate the 'appearance of conflict,' " the Supreme Court defines a conflict allowing recusal as one "of such gravity as to render it *unlikely* that defendant will receive a fair trial unless recusal is ordered" (*People v. Conner* (1983) 34 Cal.3d 141, 147 [193 Cal.Rptr. 148, 666 P.2d 5] (*Conner*), italics added) and construes the statute as prohibiting

recusal solely on the ground of the appearance of impropriety: "*Conner* establishes that, whether the prosecutor's conflict is characterized as actual or only apparent, the potential for prejudice to the defendant—the likelihood that the defendant will not receive a fair trial—must be real, not merely apparent, and must rise to the level of a *likelihood* of unfairness." (*People v. Eubanks* (1996) 14 Cal.4th 580, 592 [59 Cal.Rptr.2d 200, 927 P.2d 310] (*Eubanks*), original italics.)

■ Appellate review of a ruling on a recusal motion "involves both the substantial evidence test and examination for abuse of discretion. Factual issues are resolved under the substantial evidence test: whether there is substantial evidence to support factual determinations reached by the trial court. [Citations.] Once the pertinent factual issues are settled, the question whether the trial court's ruling should be upheld is determined under the deferential abuse of discretion test. [Citations.]" (*Millsap v. Superior Court* (1999) 70 Cal.App.4th 196, 200 [82 Cal.Rptr.2d 733].) Here, as in *Eubanks*, "the significant facts were largely undisputed. The trial court made no explicit findings on questions of evidentiary fact. Our review, then, is limited to determining if the superior court abused its discretion, while assuming the court relied on any substantial evidence that tends to support its ruling." (*Eubanks, supra,* 14 Cal.4th at pp. 594–595.)

At the hearing on the motion, the court articulated the concern that since Alavezos was both "a percipient witness to the crime" and "a most viable witness that would be called" to testify at trial he "couldn't try the case, but another cohort of his in the office would be trying the case. That cohort, who is actually the trial prosecutor, would then have to allege and try to persuade the jury that both Mr. Grant and Mr. Alavezos were believable witnesses. I think that's a true conflict type situation." Since the "entire conversation was taped," the Attorney General argued there was no problem, but the court aptly observed that "a tape is just a tape"—"not the same as a live witness telling us what actually happened"—and that somebody was going to have to tell about circumstances such as what, if anything, happened before the taping began, what, if anything, happened after the taping stopped, and what, if anything, anyone said "outside the presence of the tape." "I'm envisioning a situation where his fellow cohort would have to stand up and argue for his credibility, along with the credibility of a DA investigator," the court noted. "That's where I think a recusal situation comes about."

The Attorney General argues that conflict with established case law and failure to consider less restrictive alternatives make the order recusing the entire district attorney's office an abuse of discretion. We disagree. The Attorney General relies in part on cases affirming denials of motions to recuse entire district attorney's offices (see, e.g., *People v. Hamilton* (1988) 46 Cal.3d

123, 138–141 [249 Cal.Rptr. 320, 756 P.2d 1348], harmonized on another point with *Conner, supra,* 34 Cal.3d at p. 149, in *People v. Breaux* (1991) 1 Cal.4th 281, 293–294 [3 Cal.Rptr.2d 81, 821 P.2d 585], as stated in *Eubanks, supra,* 14 Cal.4th at p. 594; *Merritt, supra,* 19 Cal.App.4th at pp. 1578–1581) even though the deferential abuse of discretion standard limits the scope of review not just of orders denying recusal, as in *Hamilton* and *Merritt,* but of an order granting recusal, as here. The Attorney General also relies in part on cases stating the general rule that the disqualification of " 'an entire prosecutorial office from a case is disfavored by the courts, absent a substantial reason related to the proper administration of justice' " (see, e.g., *Merritt, supra,* 19 Cal.App.4th at pp. 1578–1579; *People v. Hernandez* (1991) 235 Cal.App.3d 674, 679–680 [286 Cal.Rptr. 652]), but the general rule is powerless to broaden our limited scope of review beyond the deferential abuse of discretion test (*Eubanks, supra,* 14 Cal.4th at p. 594).

The record shows that the transcriber characterized as unintelligible a dozen portions of the conversation. Even as to other portions of the conversation, reasonable people often disagree about the accuracy of transcriptions of marginally audible words in tape recordings. The transcript is mute about expressions, mannerisms, and postures that invariably accompany spoken words, even though nonverbal communications like those often help to explain implications, insinuations, and subtexts missing from spoken words. Only the testimony of percipient witnesses can fill evidentiary gaps like those.

■ In all likelihood, the Jenans will testify at trial that they lacked the requisite intent to commit the charged crimes, so one of Alavezos's colleagues from the district attorney's office, if he alone were recused, would end up vouching for the credibility of Alavezos and Grant. The Attorney General's sweeping argument that an "ethical wall within a district attorney's office is an appropriate remedy to isolate any proven conflict by a deputy" entirely overlooks the intrinsic characteristic of the deferential abuse of discretion test that "the trial court is in a better position than are we to assess the likely effect" of the incident from which the charged crimes arise. (*Millsap v. Superior Court, supra,* 70 Cal. App.4th at p. 202.) On the record here, we defer to the sound exercise of the court's discretion to find that nothing could diminish the "*likelihood* of unfairness" to the Jenans if another member of a relatively small district attorney's office were to argue to a jury the credibility of two colleagues who witnessed the charged crimes. (*Eubanks, supra,* at p. 592, original italics.)

## DISPOSITION

The recusal order is affirmed.

Vartabedian, Acting P. J., and Dawson, J., concurred.

A petition for a rehearing was denied July 17, 2006, and appellant's petition for review by the Supreme Court was denied October 11, 2006, S145209.