Filed 8/29/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOSHUA GRAHAM PACKER,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF VENTURA COUNTY,<br><br>Respondent;<br><br>THE PEOPLE,<br><br>Real Party in Interest. | 2d Civil No. B245923<br>(Super. Ct. No. 201013013)<br>(Ventura County)<br><br>OPINION AND ORDER DENYING PETITION FOR WRIT OF MANDATE |

A criminal defendant seeking to disqualify a prosecutor is not entitled to an evidentiary hearing unless, at a minimum, he makes a prima facie showing that recusal is warranted, and does so using only signed affidavits containing competent evidence. (Pen. Code, § 1424, subd. (a)(1)); *Spaccia v. Super. Ct.* (2012) 209 Cal.App.4th 93, 111 (*Spaccia*).) [1] Defendant Joshua Graham Packer (Packer) argues that this procedure violates his constitutional right to compulsory process by denying him an evidentiary hearing at which he can subpoena those persons who will not sign affidavits or who cannot be located. He further contends that the trial court erred in finding that he did not

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

make a prima facie showing.  We reject both contentions, and accordingly deny Packer's petition for writ of mandate seeking to overturn the trial court's denial of an evidentiary hearing and denial of his motion to recuse the prosecutor in his case.

*FACTS AND PROCEDURAL HISTORY*

I.  *Pending Charges*

Packer is charged with three counts of first-degree murder (§§ 187, 189) in the May 2009 deaths of Davina Husted, her husband Brock and their unborn child.  The information also charges several enhancements.  The People are seeking the death penalty.  The Ventura County District Attorney's office is prosecuting the case, and Deputy Chief Michael Frawley ("prosecutor") is the lead prosecutor.

II.  *Motion to Recuse the Prosecutor*

A.  *The Motion*

Packer moved to recuse the prosecutor under section 1424, and objected on compulsory process grounds to the statute's requirement that he use "affidavits of witnesses who are competent to testify to the facts set forth in the affidavit" to make his prima facie showing.  The motion and objection were filed after the prosecutor disclosed that his two adult children, Kyle and Elizabeth, had participated in the same youth group as Packer.  Packer sought recusal on three grounds:  (1) Packer would be calling Kyle and Elizabeth as witnesses for the defense during any penalty phase of the trial; (2) Elizabeth once dated Thomas Cathcart (Cathcart), who would be a witness for the prosecution and defense; and (3) the prosecutor "appears to have known" Davina Husted through his former wife, Lisa West (West).

B.  *The Evidence Presented*

In support of his recusal motion, Packer submitted 54 pages of affidavits from 7 people, along with 350 pages of attachments.  In opposing Packer's motion and compulsory process objection, the Ventura County district

2

attorney's office and the Attorney General's office submitted 12 pages of affidavits from two people, along with 68 pages of attachments.[2]

1. *The prosecutor's relationship to Packer through his adult children*

The prosecutor's adult children did not attend the same high school as Packer, but participated with Packer and more than 50 others in a youth group called "Young Life." The prosecutor's current wife was a co-chair of the local chapter of Young Life between 2001 and 2003. Between 2001 and 2008, while Kyle or Elizabeth participated, Young Life events were sometimes held at the prosecutor's home, and Packer attended some of those gatherings. The prosecutor was present for some of these events, but he stayed "in the background" and never interacted with Packer.

Kyle participated in Young Life from 2001 through 2006. Kyle took a snowboarding trip to Utah with this group in 2003 or 2004, and also attended a summer camp in Northern California in 2005. On each trip, Kyle was housed in the same cabin as Packer and between eight and twenty-five other boys. At the summer camp, Packer told Kyle and others he had a religious breakthrough. Kyle, Packer and others appeared in group photos taken at these events. Kyle did not have any one-on-one conversations with Packer. After Packer was charged in this case, Kyle signed up for a "Prayers for Josh" webpage because Kyle's friend asked him to do so, because Kyle wondered if the charges were true, and because Kyle prayed for Packer's soul.

Elizabeth participated in Young Life while she was in high school, from 2004 through 2008. She attended the same summer camp in 2005 that Kyle and Packer attended, and also appeared in group photos from that

---

[2] The parties also moved to strike portions of one another's affidavits and attachments. The trial court partially granted the motions to strike. The trial court nevertheless considered *all* of the proffered evidence in making its rulings. We will do the same.

camp. In 2005 or 2006, Elizabeth and two other girls hosted a MySpace webpage that contained a photograph of all three girls and Packer in a silly pose.

Although more than 50 children participated in Young Life with Packer, he named Kyle and Elizabeth as witnesses to present mitigation evidence in the penalty phase of his trial. He did this because, in his view, "a jury would likely be more favorably impressed with the testimony of a child of a prosecutor."

2. *The prosecutor's relationship to Packer through Cathcart*

Cathcart participated in Young Life. In 2005 or 2006, he dated Elizabeth for "a couple of months." He had been to the prosecutor's home at least 10 times during this period.

3. *The prosecutor's relationship to Davina Husted*

The prosecutor and West divorced in 1997. Ten years later, West served on the Junior League's board of directors while Davina Husted, one of the murder victims, was president. West was also listed on the Husted's Christmas card distribution list for 2008. A January 2008 spreadsheet recovered from Davina Husted's computer listed the prosecutor and his current wife as Junior League supporters.

C. *The Trial Court's Rulings*

The trial court held two days of hearings on Packer's motions. The court overruled Packer's constitutional challenge to section 1424. On the merits of the recusal motion, the People conceded that Packer had demonstrated an "apparent conflict" of interest. The trial court accepted this concession, noting that the prosecutor's children and Packer had had "some degree of relationship" for a "very brief period of time" "prior to the [charged] crime[s]." However, the court found that Packer had not established "the link between the apparent conflict . . . and unfairness on behalf of the prosecution." Any link was, in the court's view, based on "speculation and innuendo."

4

The court concluded that the evidence Packer presented did not warrant an evidentiary hearing because his affidavits and supporting documentation did "not support a finding of a prima facie showing of a disabling conflict of interest." The trial court denied the recusal motion.

D. *Appellate Review*

Packer petitioned this court for a writ of mandate. We summarily denied the petition, and Packer petitioned the Supreme Court for review. The Supreme Court granted review and transferred the matter to us with directions to vacate our order denying mandate and to issue an alternative writ. We gave the trial court an opportunity to reconsider its ruling and grant Packer's request for an evidentiary hearing. When the trial court declined to do so, we issued an order to show cause and set the matter for oral argument.

*DISCUSSION*

I. *Section 1424's Procedures Do Not Violate a Defendant's Right to Compulsory Process*

Section 1424, subdivision (a)(1), empowers a criminal defendant to move "to disqualify a district attorney." It prescribes a two-stage process courts must use when evaluating such motions. The first stage relies on written submissions: "The [defendant's] notice of motion shall contain a statement of the facts setting forth the grounds for the claimed disqualification and the legal authorities relied upon by the moving party and shall be supported *by affidavits of witnesses who are competent to testify to the facts set forth in the affidavit.* The district attorney or the Attorney General, or both, may file affidavits in opposition to the motion and may appear at the hearing on the motion and may file with the court hearing the motion a written opinion on the disqualification issue." (*Ibid.*, italics added.) The second stage is an evidentiary hearing. The statute provides that "[t]he judge shall review the affidavits and determine whether or not an evidentiary hearing is necessary." (*Ibid.*) No evidentiary hearing is necessary unless, at a minimum, the defendant makes a prima facie

5

showing of his entitlement to recusal during the first stage.  (*Spaccia, supra,* 209 Cal.App.4th at p. 111.)

Packer argues that this procedure violates his right to compulsory process.  Specifically, he contends that conditioning the right to an evidentiary hearing on a showing made solely through affidavits containing competent evidence "interferes with the exercise of his right [under compulsory process] to present witnesses on his own behalf.  [Citations & fn. omitted.]"  (*People v. Martin* (1987) 44 Cal.3d 1, 30 (*Martin*).)  He recognizes that the trial court considered the hearsay statements of Kyle, Cathcart and others, but asserts that he is constitutionally entitled to an evidentiary hearing in order to subpoena witnesses and develop additional evidence to help him prove that the prosecutor labors under a disabling conflict of interest.  We review the constitutionality of section 1424 de novo.  (*People v. Super. Ct. (Mudge)* (1997) 54 Cal.App.4th 407, 411.)  We reject Packer's challenge to section 1424 for two reasons.

A.  *Compulsory Process Has Not Been Extended*
   *To Pretrial Proceedings*

The United States and California Constitutions grant a criminal defendant the right "to have compulsory process for obtaining witnesses in his favor . . . ."  (U.S. Const., amend VI; Cal. Const., art. I, § 15 ["The defendant in a criminal cause has the right . . . to compel attendance of witnesses in the defendant's behalf"].)  At its core, compulsory process secures "the right to the government's assistance in compelling the attendance of favorable witnesses *at trial* . . . ."  (*Pennsylvania v. Ritchie* (1987) 480 U.S. 39, 56 (*Ritchie*), italics added.)  Compulsory process complements the right to confrontation (*Washington v. Texas* (1967) 388 U.S. 14, 19 (*Washington*)), which is also "a *trial* right" (*Ritchie*, *supra*, at p. 52 (plurality opinion); see also *People v. Gonzales* (2012) 54 Cal.4th 1224, 1267 ["[T]he right to confrontation is a trial right that does not apply with full force at a preliminary hearing"]; cf. *People v. Cain* (2000) 82 Cal.App.4th 81, 86 [no confrontation right at sentencing]).

6

In arguing that he has a right to an evidentiary hearing in support of his recusal motion at which he can subpoena and question any witnesses who will not sign affidavits or whom he cannot locate, Packer is necessarily asking us to recognize a *pretrial* right to compulsory process. The United States Supreme Court has rejected arguments to recognize a pretrial right to compulsory process that would serve as a means of gaining access to witnesses or written discovery. (*Ritchie*, *supra*, 480 U.S. at p. 56.) So has our Supreme Court, which has repeatedly voiced reluctance to take "a long step in a direction the United States Supreme Court has not gone." (*People v. Hammon* (1997) 15 Cal.4th 1117, 1127 (*Hammon*); *People v. Clark* (2011) 52 Cal.4th 856, 983.) We are doubly reluctant to take an even longer stride into territory untouched by either the United States or California Supreme Courts—especially when, as we discuss next, "persuasive reason[s] exist[] not to do so" (*Hammon*, *supra*, at p. 1127).

B. *Section 1424's Procedures Proportionately Serve Legitimate Interests*

The constitutional right to compulsory process is not "an unfettered right to offer testimony" that "automatically and invariably outweigh[s] countervailing public interests." (*Taylor v. Illinois* (1988) 484 U.S. 400, 410, 414 (*Taylor*).) To the contrary, when a defendant contends that a statute or rule categorically deprives him of his constitutional right to compulsory process, as Packer does here, he must prove both that he was deprived of the opportunity to present material evidence in his favor *and* "that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose." (*Government of Virgin Islands v. Mills* (3d Cir. 1992)

7

956 F.2d 443, 446, quoting *Rock v. Arkansas* (1987) 483 U.S. 44, 56 (*Rock*); *Holmes v. South Carolina* (2006) 547 U.S. 319, 324-325 (*Holmes*).)[3]

Put differently, a statute or rule that excludes defense evidence does not transgress a defendant's right to compulsory process if it proportionately furthers a legitimate interest. It depends on the nature of the evidence excluded. (See *United States v. Scheffer* (1998) 523 U.S. 303, 309-315 (*Scheffer*) [ban on polygraph evidence serves three "legitimate interests" is constitutional]; *Taylor*, *supra*, 484 U.S. at pp. 410-413 [exclusion of defense witness as a discovery sanction furthers legitimate "interest in the orderly conduct of a criminal trial" is constitutional]; cf. *Holmes*, *supra*, 547 U.S. at pp. 325, 331 [rule excluding defense evidence that a third party committed the charged crime when *prosecution's* evidence is strong is "arbitrary" and unconstitutional]; *Washington*, *supra*, 388 U.S. at pp. 22-23 [rule barring testimony from an accomplice is "absurd[]" and unconstitutional]; *Chambers v. Mississippi* (1973) 410 U.S. 284, 297-302 (*Chambers*) [rule precluding a defendant from confronting witnesses called by the defense with their prior inconsistent statements lacks any "underlying rationale" and is unconstitutional]; *Rock*, *supra*, 483 U.S. at p. 52 [rule barring a defendant from testifying based on any hypnotically refreshed testimony has "no justification" and is unconstitutional].)

Section 1424's procedures proportionately further three legitimate interests. Its two-stage procedure performs a screening function that furthers two state interests: (1) avoiding unnecessary harassment of prosecutors and

---

[3] Along the same lines, a defendant attacking the prosecutor's interference with the right to present material and favorable evidence in her particular case must establish that the interference was "'entirely unnecessary to the proper performance of the prosecutor's duties.'" (*In re Williams* (1994) 7 Cal.4th 572, 603, quoting *People v. Mincey* (1992) 2 Cal.4th 408, 460 and *Martin*, *supra*, 44 Cal.3d at p. 31; *People v. Jacinto* (2010) 49 Cal.4th 263, 269-270.)

trial witnesses; and (2) reducing the attendant disruption to the administration of justice flowing from unwarranted evidentiary hearings. These interests are legitimate. (*Holmes*, *supra*, 547 U.S. at pp. 326-327 [rules excluding evidence "'pos[ing] an undue risk of harassment'" are legitimate]; *People v. Dykes* (2009) 46 Cal.4th 731, 809, fn. 23 (*Dykes*) [same]; *Taylor*, *supra*, 484 U.S. at p. 415 [noting legitimate "interest in the fair and efficient administration of justice"]; see *Garcia v. Super. Ct.* (1984) 156 Cal.App.3d 670, 681-682 (*Garcia*) [two-stage process for evaluating judicial bias furthers "strong policy considerations" against harassment of judges, which "jeopardize[s] the integrity of the judicial process"].) Section 1424's further requirement that the prima facie showing be made on the basis of "affidavits of witnesses who are competent to testify" furthers a third "unquestionably" "legitimate interest"—namely, "ensuring that reliable evidence is presented to the trier of fact . . . ." (*Scheffer*, *supra*, 523 U.S. at p. 309.)

The interpretation of the compulsory process right Packer urges would affirmatively disserve two of these legitimate interests and, in the process, significantly alter California criminal procedure. Packer faults section 1424 for precluding defendants from presenting the statements of potential witnesses who refuse to sign affidavits or who cannot be located, and asserts that the remedy is to convene an evidentiary hearing at which those unwilling or unreachable affiants can be subpoenaed to testify. Although Packer contends that evidentiary hearings would be required only when affiants are "missing," the more likely effect is that evidentiary hearings would be requested (and hence required) with *every* recusal motion because it will almost always be possible to identify an uncooperative or absent witness. (Accord, *United States v. Valenzuela-Bernal* (1982) 458 U.S. 858, 866 [looking to practical impact of a ruling].) Packer's proposed solution would put the proverbial cart before the horse by mandating evidentiary hearings in order to help a defendant make a prima facie showing (instead of the other way around). It would also subject

9

prosecutors and trial witness to evidentiary hearings whenever a recusal motion is filed, which yields precisely the sort of harassment and concomitant disruption to the administration of justice that section 1424's procedures were specifically adopted to avoid.  (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 154 (1999-2000 Reg. Sess.) as amended Aug. 17, 1999, p. 3.)  [justifying adoption of two-stage procedure as needed to reduce the number of evidentiary hearings functioning as "lengthy fishing expeditions at the expense of the crime victims and the prosecutors who are often forced to testify under oath for several hours"].)

Furthermore, these adverse consequences would not be limited to motions under section 1424 because similar two-stage screening mechanisms are also used to evaluate allegations of bias and misconduct leveled against the other key participants in a criminal prosecution—namely, judges, jurors and defense counsel.  (See *Garcia*, *supra*, 156 Cal.App.3d at pp. 680-682 [due process-based claims of judicial bias]; Code Civ. Proc. § 170.3, subd. (c)(1), (3) & (6) [statutory claims of judicial bias]; *People v. Hedgecock* (1990) 51 Cal.3d 395, 419 [claims of juror misconduct raised in motion for new trial]; *People v. Carrasco* (2008) 163 Cal.App.4th 978, 989-990 [requests for jurors' identifying information under Code Civ. Proc., § 237, subd. (b)]; *People v. Sharp* (1994) 29 Cal.App.4th 1772, 1787 (*Sharp*) [claims of defense counsel conflicts of interest raised prior to or during trial under *People v. Marsden* (1970) 2 Cal.3d 118], overruled on other grounds by *People v. Martinez* (1995) 11 Cal.4th 434, 452; *People v. McCarthy* (1986) 176 Cal.App.3d 593, 597 [claims of defense counsel conflicts raised in habeas], overruled on other grounds by *People v. Goodson* (1990) 226 Cal.App.3d 277, 280.)  If, as Packer contends, section 1424's procedures for evaluating prosecutorial bias are constitutionally infirm, the same is likely true for the procedures in these

10

analogous contexts.[4] Packer's reading would make evidentiary hearings mandatory, not discretionary.

Packer offers four reasons in support of his reading of the right to compulsory process. First, he contends that section 1424's procedures are arbitrary insofar as their sole goal is to conserve judicial resources and as they hamstring only a *defendant's* presentation of evidence. This argument not only understates the legitimacy of the interest in judicial economy (*People v. Tindall* (2000) 24 Cal.4th 767, 774; cf. *Superior Court v. Elkins* (2007) 41 Cal.4th 1337, 1353), but also overlooks all three legitimate interests, detailed above, that section 1424's procedures serve. It also ignores the plain language of section 1424 and the trial court's rulings in this case, which apply section 1424's competent-evidence requirement to prosecutorial submissions as well (*id.*, subd. (a)(1)).

Second, Packer asserts that criminal defendants are elsewhere permitted to make a prima facie showing (and hence establish entitlement to an evidentiary hearing) using otherwise inadmissible hearsay. He points to motions seeking law enforcement personnel records under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*City of Santa Cruz v. Muni. Ct.* (1989) 49 Cal.3d 74, 87-88 (*City of Santa Cruz*)), and motions to suppress illegally seized evidence under section 1538.5 (*People v. Johnson* (2006) 38 Cal.4th 717, 721, 729; see also *Blackman v. MacCoy* (1959) 169 Cal.App.2d 879, 879-880 [affidavits in support of a statutory claim of judicial bias may be based upon information and belief].) This is true, but of no constitutional significance. The movant's ability to rely on hearsay in these contexts is a function of legislative

---

[4] This would be just the tip of the iceberg. (See, e.g., *McCarthy*, *supra*, 176 Cal.App.3d at p. 597 [two-stage screening used for *all* habeas claims]; *Star Motor Imports, Inc. v. Super. Ct.* (1979) 88 Cal.App.3d 201, 204 [same, with writ petitions]; *People v. Super. Ct. (Zamudio)* (2000) 23 Cal.4th 183, 201 [same, with petitions to vacate a plea under § 1016.5]; *People v. Stanley* (1995) 10 Cal.4th 764, 791-792 [same, with venue motions].)

grace, not constitutional mandate. (See *City of Santa Cruz*, *supra*, at p. 88 ["[T]he Legislature may also *preclude* the use of affidavits on information and belief"]; see also *Star Motor Imports*, *supra*, 88 Cal.App.3d at p. 204 [petitions for writ of mandate cannot be supported by affidavits containing hearsay]; *Dykes*, *supra*, 46 Cal.4th at p. 810 [same, for motions for new trial for juror misconduct]; *Sharp*, *supra*, 29 Cal.App.4th at p. 1787 [same, for habeas petitions].) Our Legislature is not barred from insisting upon the use of competent evidence because the right to compulsory process does not encompass the "right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." (*Taylor*, *supra*, 484 U.S. at p. 410.)

Third, Packer argues that this is a capital case, and hence warrants a different constitutional standard. It does not. (See *Holmes*, *supra*, 547 U.S. at pp. 324-325 [capital case using standard compulsory process analysis]; see also *Hollywood v. Super. Ct.* (2008) 43 Cal.4th 721, 728 [§ 1424's standards same for all cases, including capital cases].)

Lastly, Packer posits that granting him an evidentiary hearing ends up conserving judicial resources in the long run because the refusal to grant him such a hearing now will inevitably necessitate an evidentiary hearing by a federal court reviewing any resulting conviction on habeas corpus. (See *Hurles v. Ryan* (9th Cir. 2013) 706 F.3d 1021, 1038.) We disagree with both premises of this argument. A federal court will convene an evidentiary hearing only if the state court did not provide one *and* provided no "other opportunity for the [defendant] to present evidence." (*Ibid.*) Because section 1424 permits defendants to present competent evidence through affidavits, this may well constitute a sufficient "opportunity . . . to present evidence." (*Hurles*, *supra*, at p. 1038.) Even if it does not, the potential for federal review of state convictions on habeas corpus has been around for well over a century (Act of Feb. 5, 1867, ch. 28, 14 Stat. 385.) [extending federal habeas corpus writ

generally to all state prisoners]), and does not provide a basis unto itself for modifying state procedure, particularly when the modification sought comes with the deleterious consequences outlined above.

In sum, we hold that section 1424 does not violate a defendant's right to compulsory process by conditioning eligibility for an evidentiary hearing on the ability to make a prima facie showing made solely with affidavits containing competent evidence.[5]

## II. *The Trial Court Did Not Abuse Its Discretion In Declining To Hold An Evidentiary Hearing*

Packer also argues that the trial court erred in not granting him an evidentiary hearing. Section 1424 contemplates an "exercise of discretion on the part of the trial court in determining whether an evidentiary hearing is necessary." (*Spaccia*, *supra*, 209 Cal.App.4th at p. 109.) But a trial court's discretion in this regard is not boundless. An evidentiary hearing is necessary if the defendant's prima facie showing raises factual disputes on which relief turns (see *People v. Romero* (1994) 8 Cal.4th 728, 739-740), but is pointless if the defendant is unable to point to facts in his prima facie case which, if credited, would entitle him to relief (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 974, 962 [noting "an evidentiary hearing [would] serve[] no legitimate purpose or function" in that situation]). A trial court will accordingly abuse its discretion in denying an evidentiary hearing in support of a recusal motion under section 1424 only if the defendant has made a prima facie showing of entitlement to recusal and that showing includes facts that are disputed and material to the court's ruling on the merits of recusal.

---

[5] It also does not offend due process, as Packer also argues, because the statute's two-stage procedure, with the guarantee of post-trial judicial review, provides an adequate opportunity to be heard. (Accord, *Garcia*, *supra*, 156 Cal.App.3d at pp. 680-682 [rejecting due process challenge to two-stage process for evaluating judicial bias claims].)

Because the trial court's denial of an evidentiary hearing in this case rested solely on its finding that Packer had not made the requisite prima facie showing, we begin by reviewing this finding. Our review is limited. "The trial court's findings of fact are reviewed for substantial evidence, . . . and its application of the law to the facts is reversible only if arbitrary and capricious. [Fn. omitted.]" (*Haraguchi v. Super. Ct.* (2008) 43 Cal.4th 706, 711-712 (*Haraguchi*).)

In making a prima facie showing for recusal under section 1424, it is not enough to show that the prosecutor's involvement "would be unseemly, would *appear* improper, or would tend to reduce public confidence in the impartiality and integrity of the criminal justice system." (*People v. Eubanks* (1996) 14 Cal.4th 580, 592 (*Eubanks*).) Instead, a defendant has the burden of asserting facts which, if credited, establish: (1) a "conflict of interest"; (2) "so grave as to make a 'fair treatment' unlikely." (*Id.* at pp. 593-594.) A "conflict of interest" involving the prosecutor exists when he or she is shown to have a personal "axe to grind" (*id.*, at p. 590, quoting *Wright v. United States* (2d Cir. 1984) 732 F.2d 1048, 1056 (*Wright*)) that creates a "reasonable possibility" that he or she will not exercise prosecutorial discretion "in an evenhanded manner" (*People v. Conner* (1983) 34 Cal.3d 141, 148 (*Conner*)). The prosecutor's personal interest must be more than an advocate's usual interest in prevailing. (*People v. Vasquez* (2006) 39 Cal.4th 47, 65 (*Vasquez*) ["Zealous advocacy in pursuit of convictions forms an essential part of the prosecutor's proper duties and does not show the prosecutor's participation was improper"].) Because proof of a conflict does not alone

14

warrant recusal[6] (*Spaccia*, *supra*, 209 Cal.App.4th at p. 112, fn. 33), the defendant must also prove that it is more likely than not, that due to the conflict, he or she will not be treated fairly during the criminal proceedings. (*Haraguchi*, *supra*, 43 Cal.4th at p. 713; *Eubanks*, *supra*, at p. 593 ["the need for prosecutorial impartiality extends to all portions of the proceedings, not only to the trial"].)

Packer argues that the prosecutor's conflict of interest springs from a personal interest in this case. Packer specifically alleges three sources of conflict. We consider each.

A. *The Prosecutor's Adult Children*

   *May Be Penalty Phase Witnesses*

Packer asserts that his decision to call the prosecutor's two adult children as witnesses warrants recusal. Packer has listed them solely as penalty phase witnesses to offer mitigating evidence under section 190.3, subdivision (k), and argues that this creates a disabling conflict of interest for the prosecutor in two ways.

   1. *Prosecutor's "Emotional Embroilment"*

Packer asserts that his decision to call Kyle and Elizabeth as witnesses has angered the prosecutor, and that his "emotional embroilment" has already manifested itself and will likely result in an unfair trial. For support, Packer points to: (1) the prosecutor's late discovery disclosures and refusal to provide discovery not mandated by section 1054.1; (2) the prosecutor's pretrial

---

[6] Prior to the enactment of section 1424, an apparent conflict alone *had been* sufficient. (*People v. Super. Ct. (Greer)* (1977) 19 Cal.3d 255, 269 [authorizing recusal of prosecutor under Code Civ. Proc., § 128, subd. (a)(5), based on a showing of a conflict of interest that "appear[s] to affect" the prosecutor's impartiality].) Our Legislature enacted section 1424 to overrule *Greer* because, in its view, *Greer* prompted a "substantial increase in the number of unnecessary prosecutorial recusals under [its] 'appearance of conflict' standard . . . ." (*People v. Petrisca* (2006) 138 Cal.App.4th 189, 194, quoting *People v. Merritt* (1993) 14 Cal.App.4th 1573, 1578.)

litigation tactics; (3) the prosecutor's expressions of annoyance with defense counsel's litigation strategy, including the statement that calling his children as witnesses constitutes "the lowest sort of trial tactics"; (4) the prosecutor's minimal cooperation with defense investigators insofar as he would only give Elizabeth their contact information but would not provide her address, coupled with Elizabeth's "tweet" that she was "really over not being able to tweet [her] whereabouts. This better pay off. #attorneyfatherprobs"; (5) Kyle's conduct in skipping his first interview with defense investigators and making two edits to the investigator's summary of that interview, even though prosecutor told him it was okay to be interviewed and to tell the truth; and (6) the prosecution investigator's instruction to Cathcart not to mention Elizabeth during an interview with the prosecutor, and Cathcart's unwillingness to be re-interviewed by the parties.

Packer presented no direct evidence that the prosecutor had any role in Elizabeth's, Kyle's, Cathcart's or the prosecution investigator's conduct, or that any of the prosecutor's own conduct was motivated by a personal grievance against Packer. To be sure, the trial court could have reasonably inferred that the prosecutor was upset with Packer and was grinding that personal axe by tampering with witnesses and taking positions in pretrial litigation unhelpful to the defense. (See *People v. Super. Ct. (Humberto S.)* (2008) 43 Cal.4th 737, 747 ["the persistent, bad faith use of [lawful] litigation tactics" can constitute circumstantial evidence of "an underlying conflict"].) But the trial court could also reasonably infer that the prosecutor's litigation positions were zealous but evenhanded discretionary calls, that the prosecutor had nothing to do with the witnesses' reluctance to fully cooperate with either party, and that the prosecutor's statements constituted public posturing in a high-profile case rather than an admission of a personal vendetta. (See *People v. Zapien* (1993) 4 Cal.4th 929, 970-971 [impermissible conflict not proven by showing different prosecutor might have made different discretionary litigation

16

decisions].) We may not gainsay the trial court's decision to draw one reasonable inference over another (*Lake v. Reed* (1997) 16 Cal.4th 448, 457 ["'Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's'"]), especially when the trial court is in a "better position" than we are to "evaluate the consequences of a potential conflict in light of the entirety of a case." (*Haraguchi*, *supra*, 43 Cal.4th at p. 713; *Conner*, *supra*, 34 Cal.3d at p. 149.) The trial court accordingly did not abuse its discretion in finding that Packer had not sufficiently proved the "link between the apparent conflict . . . and unfairness on behalf of the prosecution." (Accord, *Vasquez, supra*, 39 Cal.4th at pp. 62, 63 ["a personal interest that might add to [a prosecutor's] zeal" is "not always regarded as creating so substantial a conflict as to deprive the defendant of fundamental fairness"].)

### 2. *Automatic Recusal Rule*

Packer alternatively argues that his decision to call the prosecutor's children itself created a disabling conflict because the jury will be more inclined to discredit his children's testimony if he, as their father, argues that it is not credible. We disagree.

We are not convinced that Packer's proffered rule of automatic recusal is implicated in this case. At this point, we do not know if the trial court will find Kyle and Elizabeth's testimony to be cumulative under Evidence Code section 352 or whether that court will admit evidence of their familial link to the prosecutor.[7] Moreover, because Kyle's and Elizabeth's likely testimony would address Packer's behavior many years ago that is unrelated to the charged crimes, the prosecutor in this case would likely be arguing the *significance* of his children's testimony on the question of whether death is an appropriate penalty rather than contesting their credibility.

---

[7] We express no opinion on these evidentiary questions.

Packer's proffered rule is flawed in any event. It is categorical, because it would automatically and without exception mandate recusal of a prosecutor whenever a defendant can find and name as a witness anyone with a connection to the prosecutor. Our Supreme Court generally eschews categorical disqualification rules. (E.g., *Eubanks*, *supra*, 14 Cal.4th at p. 599 [rejecting notion that *all* cases in which a victim provides financial assistance to the prosecutor's office "necessarily subjects the defendant to unfair . . . treatment"]; *Vasquez*, *supra*, 39 Cal.4th at p. 65 [rejecting notion that kinship between defendant and employees of the prosecutor's office necessarily mandates recusal].) It can be manipulated, because it would empower defendants to create disabling conflicts of interest whenever they can find anyone with a connection to their case and the prosecutor. (*Millsap v. Super. Ct.* (1999) 70 Cal.App.4th 196, 203.) And it is not justified, because courts have not treated the existence of a prior connection between a member of the prosecutor's family, or the prospect that a prosecutor may argue a particular witness's credibility, as a *per se* ground for disqualification. (See *Wright*, *supra*, 732 F.2d at pp. 1051, 1058 [prosecutor not disqualified, under due process principles, when his wife previously reported defendant's other misdeeds to the authorities]; see also *People v. Cannedy* (2009) 176 Cal.App.4th 1474, 1480-1489 [trial court did not abuse its discretion in not recusing prosecutor who will argue credibility of a colleague]; *People ex rel. Younger v. Super. Ct.* (1978) 86 Cal.App.3d 180, 206-210, superseded on other grounds by § 1424, subd. (a)(1) [same]; cf. *People v. Jenan* (2006) 140 Cal.App.4th 782, 791-793 [trial court did not abuse its discretion in recusing prosecutor who will argue credibility of colleague from a small office, when that colleague witnessed the defendant's crime].)

18

B. *The Prosecutor's Daughter's*

   *Ex-Boyfriend May Be a Witness*

         Packer argues that Cathcart's status as a guilt and penalty phase witness also constitutes a conflict of interest. Packer does not explain why Cathcart's brief relationship with the prosecutor's daughter seven or eight years ago would create a personal reason for the prosecutor to treat Packer unfairly, and the trial court did not abuse its discretion in perceiving none.

C. *The Prosecutor Had Some Relationship*

   *With One of the Alleged Murder Victims*

         Packer articulates two connections between the prosecutor and Davina Husted. Packer notes that the prosecutor's former wife was actively involved in the Junior League with Husted. Because this involvement occurred more than a decade after the prosecutor and his former wife divorced, the trial court did not abuse its discretion in rejecting this as a basis for recusal.

         Packer alternatively asserts that the prosecutor and his current wife appear in a January 2008 spreadsheet listing Junior League supporters that was found on Davina Husted's computer. This demonstrates that Husted possessed the prosecutor's current address. But Husted was president of the Junior League, so her possession of a list of supporters does not show that she knew the prosecutor or had any relationship with him.

         In sum, the trial court did not abuse its discretion in concluding that Packer had not made a prima facie showing that the prosecutor's apparent conflict of interest was so grave as to result in an "actual likelihood of unfair treatment." (*Haraguchi*, *supra*, 43 Cal.4th at p. 719.) The court consequently did not abuse its discretion in denying an evidentiary hearing or in denying his recusal motion.

*DISPOSITION*

The petition for a writ of mandate is denied.  The Order to Show Cause, having served its purpose, is discharged.

<u>CERTIFIED FOR PUBLICATION.</u>

HOFFSTADT, J.[*]

We concur:

GILBERT, P. J.

PERREN, J.

---

[*](Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.).

20

Patricia M. Murphy, Judge

Superior Court County of Ventura

_____

Stephen P. Lipson, Public Defender and Michael C. McMahon, Chief Deputy for Petitioner.

No appearance for Respondent.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Zee Rodriguez, Deputy Attorney General, for Real Party in Interest.